## HOLM v. HOLM et al.

(Supreme Court, Appellate Division, First Department. July 7, 1911.)

LIBEL AND SLANDER (§ 16*)—LIBEL—HATRED AND CONTEMPT—ALLEGATIONS OF COMPLAINT.

The complaint in libel alleged that plaintiff was a noted lecturer, and as a result of his travels, learned of the existence in China of a monument containing valuable religious inscriptions claimed to have been placed thereon by the Nestorian Monks in the Eighth Century, A. D., and after a perilous expedition he obtained a replica of the monument which was installed in an art museum after investigation by scientific authorities, after which it received wide discussion among scientists, and plaintiff was highly commended, defendant's paper among others publish-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing a laudatory article concerning it; that defendant, knowing such facts, maliciously intending to hold plaintiff up to ridicule and contempt, published an article concerning plaintiff which quoted another article written by a third person relating to plaintiff's expedition, the quoted article referring to it as a "peculiar and idiotic expedition," stated that plaintiff's company consisted of women, carpenters, etc., referred sarcastically to the expedition as being to discover "Nestor's Tomb," with sarcastic references to "Nestor's family" as well as to plaintiff's conduct in having himself and the monument photographed, and the writer of the article, referring to the quoted article, sarcastically assumed to correct an error in the latter by stating that the honorary sword presented to plaintiff cost $10 instead of $50, with $7 for "regilding and inscription," and stated that the sword was "cheap for a presentation sword." *Held*, that the article was libelous per se as holding up plaintiff to ridicule and contempt.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 1–9; Dec. Dig. § 16.*]

Appeal from Special Term, New York County.

Action by Fritz V. Holm against "John" P. Holm and another. From an order sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Cowan, Ketchum & Marcus (Benjamin Marcus, of counsel), for appellant.

Ralph Ballantine (T. Langland Thompson, on the brief), for respondents.

CLARKE, J. The complaint, after alleging the plaintiff's ancestry, education, societies, and associates, avers that:

"Plaintiff is and at all times hereinafter mentioned was a noted tourist, newspaper correspondent, traveler, writer and lecturer of recognized ability; * * * that early in 1907 the plaintiff, as the result of his world-wide travels and extensive study, particularly while in the Far East, learned of the existence of a monolithic tablet or monument containing valuable religious data and inscriptions, and claimed to have been the work of the Nestorian Monks in the Eighth Century, A. D., and he thereupon set out upon a perilous and costly expedition to the interior of China to procure the aforesaid monument for the benefit of science in the Western world; that the opposition of the Chinese government prevented the removal thereof, but that, after many hardships, plaintiff succeeded in obtaining a replica of the said tablet, which was afterwards brought to the United States some time in June, 1908, and since that time has been on exhibition in the Metropolitan Museum of Art in the city of New York; that prior to the installation of the said replica in the Museum of Art, as aforesaid, the same was the subject of rigid investigation by scientific authorities, and, its value having been established, it thereafter became the subject of world-wide discussion among theologians, scientists, and students of archæology, and pronounced an important and valuable acquisition to science, and the plaintiff was recipient throughout this and other countries, and in the press of the entire world, of commendation and honors from scientists and scientific institutions, and the subject of highly laudatory and distinguished comment of himself and his achievement on the part of the press in general, and among the papers that published such complimentary accounts of plaintiff prior to the libelous article hereinafter mentioned and set forth, was the Danish American, the newspaper owned by the defendant Holm; that in the early part of 1909 plaintiff published a book under the title of 'The Nestorian Monument,' containing an offi-

cial scientific account, description, and record of the expedition, as well as a translation of the inscription on said tablet; * * * that the defendants well knowing the aforementioned facts, * * * wickedly and maliciously contriving and intending to injure this plaintiff in his good name, fame and credit, and to bring him into public scandal, infamy and disgrace, to hold him up as an object of hatred, ridicule, contempt and obloquy, * * * falsely, wickedly and maliciously printed * * * the following false, im-proper, scandalous, malicious and defamatory article of and concerning the' plaintiff: * * * 'Mr. Editor, the well-known and witty Arne Jensen, son of ex-pastor Jensen, has written in "Ekstrabladet" about the Nestorian Stone, now being exhibited at the Metropolitan Museum, and the expedition under the leadership of Fritz W. Holm (who through a misprint is named Anders W. Holm). Arne's article is very facetious, and I request you to reprint it. Vald Blad.' The article follows:

" 'In an issue of the Illustreret Tidende, which perchance has fallen into my hands, I read an account of Fritz W. Holm's (meaning the plaintiff) Dan-ish Nestorian Expedition to China, one of the most peculiar and idiotic ex-peditions ever fitted out under the Danish Flag. Besides Mr. Holm (meaning the plaintiff), the expedition numbered the following: Carpenter Carl Chris-tian Holms, laborer Andresen's wife, Ann Christine, Painter Albinus Nielsen, Pensioned Shipbuilder Johan Jacob Davidson, Ex-House Owner Trorod Jens Bonne, Widow Johanne Hansen, Pensioned Street Railroad Conductor Hans Hansen and Milkman Anders, Joergensen's wife Nielsine (meaning thereby to reflect discredit and ridicule upon plaintiff's expedition by associating him with ignorant and illiterate people and to disparage the expedition by intimat-ing that women were a part thereof). With these individuals, Fritz W. Holm (meaning the plaintiff) went to the interior of·China in order to search for Nestor's Tomb and save it from oblivion (meaning thereby to disgrace and ridicule the expedition by intimating that the search was for the tomb of a mythical hero and to travesty the real object of the search, the tablet erected by the Nestorian Monks). This was a beautiful thought on Holm's part (meaning the plaintiff), and in case he cultivated a similar interest in the graves of his own family, many churchyards in this country would look more attractive (meaning and intending thereby to reflect discredit upon the plain-tiff because of irreverence for his ancestors), and I should not have said a word about his Nestorian Expedition, but the truth of the matter is that Holm (meaning the plaintiff) had no business at Nestor's Tomb. In the first place, Nestor's family is fully aware of the burial place of the old fellow, and there was therefore no reason to equip a large expedition in order to find the grave (meaning thereby to ridicule and discredit the expedition by characterizing it as a search for the grave of a man named "Nestor") ; second-ly, the grave is to this day kept in order by the family. Nestor died in 1808 as "Konsistorialraad" and Knight of the Dannebrog, and the tomb of such·a prominent man is not given over to oblivion even if it is situated a few miles in the interior of China. Holm, however (meaning the plaintiff), had got the idea that the descendants of Nestor were a bad lot, entirely without spirit of veneration, and that the tomb was in a sadly neglected state, if it still ex-isted (meaning thereby to ridicule the expedition and Holm's scientific knowl-edge of his quest, by continuing to intimate that it was the search for a grave). Without a word to the local Nestorians (meaning and intending to ridicule and discredit the plaintiff and his expedition by intimating under-handed and improper conduct and burlesquing the expedition) about his inten-tion, he started his expedition hoping to acquire immortal fame as the dis-coverer and rebuilder of the tomb of the late "Konsisterialraad." What the Chinese thought when Holm (meaning the plaintiff) landed at the Custom House in Shanghai with his mixed party of gentlemen and ladies (meaning thereby that the party was one calculated to create suspicion) the report of Holm (meaning the plaintiff) has nothing to say about. He (meaning the plaintiff) merely mentions that he went into the interior, where he had a great deal of adversity and where he lost some of his people, whom he is likely to get back in eight months' time when their term of penal servitude is over (meaning and intending thereby to reflect discredit, disgrace and ridi-cule upon the plaintiff, his expedition and assistants by attributing to them

criminal offenses). Finally he (meaning the plaintiff) was standing at Nestor's Tomb (meaning and intending to ridicule the plaintiff) in the graveyard. He (the plaintiff) permitted himself to be photographed, together with the tombstone, the picture is reproduced in the "Illustrat Tidende," then he caused the crew to take up the stone, and when he had once more been photographed together with the hole (meaning and intending to ridicule plaintiff by intimating that he stood in the depression left by the removed stone) in which the stone had been standing, he had it sent by rail to Sianfu, where he had it placed in the main street of the city, so that traffic of busses throughout that street were stopped forever. In the report there is not a syllable about what the department of funerals, the police and the common public thought about all this. But what Holm (meaning the plaintiff) undertook in a foreign country would about correspond to what would happen if a Chinese at the head of a rather doubtful band came to Copenhagen with one of the steamers of the East Asiatic Company, went to Fasan Churchyard, appropriated Lorry Feilberg's family vault and removed this into Koebmager street with granite poles, iron chains and hedges, so that all vehicular traffic would have to be diverted through Silke street. The Chinese must truly be the most good natured people in the world, for Fritz W. Holm (meaning the plaintiff) still lives (meaning and intending thereby to intimate that plaintiff should have been executed) in New York. But the descendants of Nestor also live, and one might imagine that some day they might like to have a talk with Holm (meaning the plaintiff). It is not by tampering with people's tombstones that we shall show that we are a wide-awake nation, a people with courage and initiative. As an explorer, Fritz W. Holm (meaning the plaintiff) will hardly bring fresh laurels to his brow.                                Arne.' :

"Really a very funny little article. Allow me, by the way, to correct a little error in the financial account concerning the presentation sword which was given to Mr. Fritz W. Holm (meaning the plaintiff) by seven representatives of Sweden, Norway and Denmark, together with a most elegant lithograph addressed. This sword did not cost fifty dollars, but ten dollars (meaning and intending thereby to ridicule the value of the gift and to disparage the extent of the recognition and honor conferred upon the plaintiff). To this must be added the sum of seven dollars for regilding and inscription, but that must be said to be cheap for a presentation sword (meaning and intending thereby to ridicule plaintiff and his achievement). It is to be hoped that Mr. Holm (meaning the plaintiff) will use the sword mildly against the savages in Thibet, for it is very sharp.

"Yours very truly,                                        Valdamar Blad,
                            "Translator of Hjortens Flugt."

The learned Special Term held that the words complained of are not libelous per se, and sustained the demurrer, and from the order entered thereon, this having come on as a contested motion pursuant to section 976 of the Code of Civil Procedure, plaintiff appeals.

The respondent urges that the article was merely a facetious criticism of the expedition, made in a spirit of good humor, and that it was not to be taken seriously as an attack upon plaintiff's character or ability. This was the same argument interposed in Triggs v. Sun Printing & Publishing Association, 179 N. Y. 144, 71 N. E. 739, 66 L. R. A. 612, 103 Am. St. Rep. 841. The Appellate Division in that case had sustained the demurrer accepting that view of the article, but the Court of Appeals reversed, saying:

"A written or printed statement or article published of or concerning another which is false and tends to injure his reputation and thereby expose him to public hatred, contempt, scorn, obloquy, or shame is libelous per se." [Citing cases.] "When the articles published by the defendant of and concerning the plaintiff are read in the light of the foregoing principles of law, it becomes obvious, we think, that they were libelous per se. It seems impossible for any fair-minded person to read the articles alleged in the complaint

without reaching the conclusion that they were not only intended, but necessarily calculated, to injure the plaintiff's reputation, and to expose him to public contempt, ridicule, or shame."

In our opinion the article at bar is of precisely the same character as that discussed in the Triggs Case and was intended to and does hold the plaintiff up to ridicule and contempt. That being so, we are bound to follow the decision of the court of last resort and to hold that the language complained of is libelous per se.

It follows, therefore, that the order appealed from should be reversed, with $10 costs and disbursements, and the demurrer overruled, with $10 costs, with leave to the defendants to withdraw their demurrer and interpose an answer, upon the payment within 20 days after the service of the order to be entered hereon, and upon payment of the costs in this court and at the Special Term. All concur.