### D'ALTOMONTE v. NEW YORK HERALD CO.

(Supreme Court, Appellate Division, First Department. January 3, 1913.)

1. LIBEL AND SLANDER (§ 16*)—ACTIONABLE WORDS—EXPOSURE TO CONTEMPT AND RIDICULE.

A publication in a newspaper of a story falsely purporting to be written by plaintiff, followed by a short biographical sketch, and relating in the first person an adventure in an African forest in which plaintiff and his party rescued a young American from cannibals, and in which plaintiff sensationally described himself in an absurd and improbable adventure, was as to plaintiff, a member of the Italian nobility, of several geographical societies, a noted newspaper correspondent, traveler, and writer, a lecturer of recognized ability, who was internationally known, and had

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

held editorial and political positions, actionable libel, as tending to expose him to the suspicion and belief that he was guilty of sensationalism and of falsifying facts, incidents, and situations.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 1–9; Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 5, pp. 4116–4125.]

2. TORTS (§ 8*)—INVASION OF RIGHT OF PRIVACY—STATUTES—"PURPOSES OF TRADE."

Under Civil Rights Law (Consol. Laws 1909, c. 6) § 51, which provides that any person whose name, portrait, or picture is used within the state for advertising purposes, or for "purposes of trade" without his written consent, may maintain an action for damages, the false use of plaintiff's name as the writer of a story of adventure, attributed to him as a person of such reputation that an article written by him would be calculated to attract readers to the paper, was a use of his name for the "purposes of trade," and as such actionable.

[Ed. Note.—For other cases, see Torts, Cent. Dig. § 8; Dec. Dig. § 8.*

For other definitions, see Words and Phrases, vol. 7, p. 5866.]

3. ACTION (§ 48*)—JOINDER—CLAIM ARISING OUT OF SAME TRANSACTION.

A cause of action for libel for the publication of a newspaper article falsely represented to have been written by plaintiff, and tending to expose him to contempt and ridicule, and a cause of action under Civil Rights Law (Consol. Laws 1909, c. 6) § 51, giving an action for damages for the use of any name for advertising purposes or for purposes of trade, without written consent, arising out of the same publication, were properly joined, since all of plaintiff's damages must be recovered in the same action.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 490–510; Dec. Dig. § 48.*]

Ingraham, P. J., and Scott, J., dissenting in part.

Appeal from Special Term, New York County.

Action by Antonio B. d'Altomonte against the New York Herald Company. From an order overruling a demurrer to the complaint, and awarding judgment to plaintiff, defendant appeals. Affirmed with leave to withdraw demurrer, and to answer on payment of costs.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Robert W. Candler, of New York City, for appellant.

· Michael Schaap, of New York City, for respondent.

CLARKE, J. [1] I agree with the opinion of Mr. Justice SCOTT, except so much thereof as sustains the demurrer to the first cause of action upon the ground that the article complained of is not libelous. The complaint alleges that the plaintiff was and still is a member of the Italian nobility, being a baron by birth; that he was and still is a member of the Italian Geographical Society of Milan, and a member of the American Geographical Society of New York; that at the time of said publication he was of good name, fame, and credit, and well and favorably known throughout the world, having been prominent in many endeavors of international scope; that he was a noted professional newspaper correspondent, traveler, writer, and lecturer of recognized ability, commanding several languages; that from July, 1902, to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

December, 1905, he was commissioner of police in the Belgian Congo, was for, some time chief editor of La Mazione, a daily newspaper of wide circulation published in Florence, Italy; that he had delivered lectures on African life and politics before the Geographical Society of Milan and Florence and their audiences; that he had been employed from time to time by the police department of the city of New York and by the Treasury Department of the United States to do work in the investigation of crime and criminals; that at the time of said publication he was a well-known authority on criminology and on African life and politics; that he had written books, articles, and pamphlets on said subjects which had attained wide circulation; that prior to the publications complained of he had enjoyed an international reputation for honesty, uprightness, integrity, fidelity, dignity, competency, and ability; that he had the acquaintance, friendship, and respect of various and numerous business and professional men of high standing, scientists, and scholars throughout the world, and had business connection with distinguished persons of various nations; that the article held him up to public scandal, infamy, and disgrace, ridicule, and contempt, and to cause him to be believed by his neighbors, associates, friends, and persons generally to have been guilty, and that he was guilty, of sensationalism and bad taste, and for the purpose of recording a personal adventure to have falsified, and that he had falsified facts and incidents, and to injure and destroy the esteem in which plaintiff as an individual and in his professional calling had been held, and to deprive him of his standing among scholars and professional men; that said article consists of a story purporting to have been written by plaintiff for defendant's newspaper, and at the head thereof a short biography of plaintiff; that said story was fabricated by defendant or some person in its employ, or by some person from whom it bought said article; that plaintiff is not the author of said story, nor was he ever connected with the persons or incidents mentioned and described; that said story represents plaintiff as describing himself in an absurd and improbable adventure, and exposes him to the natural inference, suspicion, and belief that he was guilty of sensationalism and bad taste and of falsifying and fabricating facts, incidents, names, places, and situations. This article contains a half page illustration and is headed:

"Stopping a Congo Cannibal Feast. The adventures in the African Forest wherein a young and courageous American is rescued just as he is about to be killed and eaten by savages."

It then gives a short biography of the writer, and states that:

"The young American whom d'Altomonte and his party rescued from the cannibals is John Harris Walton, still living in San Paolo di Loendo, serving as manager of the Hatton & Cookson Company concessions."

It is subheaded, "By Baron Antonio d'Altomonte," and is written in the first person, "The affair I am about to detail occurred," etc.

I think the publication ascribing the authorship of such an article to a man of the standing and reputation which plaintiff claims for himself admitted by the demurrer, if false, and a forgery, is calculated to

hold him up to ridicule and contempt, and to destroy his influence as a writer and lecturer, and is susceptible of the construction and the consequences placed upon it by the complaint. I think it comes within the spirit of the decisions in the Triggs Case, 179 N. Y. 144, 71 N. E. 739, 66 L. R. A. 612, 103 Am. St. Rep. 841, 1 Ann. Cas. 326, and Holm v. Holm, 146 App. Div. 75, 130 N. Y. Supp. 670.

The order appealed from should be affirmed, with $10 costs and disbursements to the respondent, with leave to the defendant to withdraw the demurrer, and to answer within 20 days on payment of costs in this court and in the court below.

McLAUGHLIN and DOWLING, JJ., concur.

SCOTT, J. Plaintiff sues upon two causes of action—one for damages for libel, and one for damages under section 51 of the Civil Rights Law, known as the Right of Privacy Act. See Laws 1903, c. 132. The defendant has demurred separately to each count for general insufficiency, and has also demurred to the complaint as improperly joining causes of action. Both causes of action are founded upon the publication by defendant of an article introduced by a short biography of plaintiff and consisting of what purports to be a short story written by him in the first person, and recounting in vivid language an adventure in which he took a leading part, and which resulted in the rescue of a white man who was about to be killed by African cannibals. The story is vividly told, and, while its literary style may not be of the highest class, it contains nothing reflecting in the slightest degree upon the courage, resourcefulness, or conduct of plaintiff. Indeed, his objection to it seems to be founded upon the fact that it extols him so highly that he may be accused of undue self-laudation. He alleges that the story is untrue in every particular, that he did not write it, and that the incidents described therein never occurred. He therefore claims to have been libeled by it, and seeks damages for its publication. He alleges no special damage. If, therefore, he can sustain the first count in his complaint, it must be because the article is libelous per se. Mere falsity in a writing concerning a person does not constitute a libel. It must go further, and tend to disgrace the person written about, or bring him into ridicule or contempt. Martin v. Press Publishing Co., 93 App. Div. 531, 87 N. Y. Supp. 859. There is no ambiguity about the article complained of, and we agree with the learned justice at Special Term that "it contains no reflection upon plaintiff's honor or integrity, nor does it portray him in any ridiculous situation." The question whether the article is libelous or not is therefore one for the court. Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810. We cannot find in the article anything tending in any wise to injure the plaintiff's reputation, except perhaps as a skillful writer of fiction, but no case has yet gone so far as to hold that it is libelous per se to attribute to a writer an inelegant literary style. Nor does it hold him up to ridicule in the sense in which the articles complained of in Triggs v. Sun Printing & Pub. Ass'n, 179 N. Y. 144, 71 N. E. 739, 66 L. R. A. 612, 103 Am. St. Rep.

841, 1 Ann. Cas. 326, were deemed by the Court of Appeals to have held up the plaintiff in that action to ridicule. Those articles were avowedly written in jest with a view to amusing the readers of the newspaper at the expense of Prof. Triggs. The article complained of in plaintiff's first cause of action is written in a perfectly serious vein, and is, if anything, complimentary, rather than derogatory, to plaintiff's character. Doubtless it would be libelous to falsely attribute to an author an obscene or profane article, or one which expressed sentiments abhorrent to right-thinking people, for such an article would hold the putative author up to scorn and contumely, but the article complained of here is not such a one. As to this cause of action, the demurrer should have been sustained.

[2] As to the second cause of action I think that the demurrer was rightly overruled. Section 51 of the Civil Rights Law reads, in part, as follows:

"Any person whose name, portrait or picture is used within the state for *advertising purposes* or for the *purposes of trade*, without the written consent first obtained as above provided, may maintain an equitable action * * * and may also sue and recover damages for any injuries sustained by reason of such use. * * *"

The question is whether the use of the plaintiff's name as the author of the article complained of was a use "for advertising purposes or for the purposes of trade." I think it was. The article was not a news article in any proper sense, but purported to be a story of adventure, and was attributed to plaintiff as a person of such experience and character that an article by him would be calculated to attract readers to the paper. The story would have been just as good (or bad) a one as a literary production if plaintiff's name had been omitted, and if no author's name had been appended. The obvious purpose of using plaintiff's name was to give to the story an attribute of verisimilitude and authenticity. This, as I consider, was using the name for the purposes of trade.

[3] As to the joinder of the causes of action. It is apparent that both causes of action arise out of the same transaction, to wit, the publication of the article complained of. All the damages the plaintiff suffered in consequence of the publication must be recovered in the same action. Binns v. Vitagraph Co., 147 App. Div. 783, 132 N. Y. Supp. 237.

INGRAHAM, P. J., concurs.