FLORENCE E. BEN-OLIEL, Appellant, *v.* THE PRESS PUBLISHING COMPANY, Respondent.

(Argued June 3, 1929; decided July 11, 1929.)

*E. Jean Nelson Penfield* for appellant. The article is libelous *per se.* (*Cropp* v. *Tilney,* 3 Salk. 226; *Sydney* v. *MacFadden Newspaper Pub. Corp.,* 242 N. Y. 208; *Morrison* v. *Smith,* 177 N. Y. 366; *Triggs* v. *Sun P. & P. Co.,* 179 N. Y. 144; *Bennett* v. *Commercial Ad. Assn.,* 230 N. Y. 125; *Morey* v. *Morning Journal Assn.,* 123 N. Y. 207; *Bergmann* v. *Jones,* 94 N. Y. 51; *Adirondack Record* v. *Lawrence,* 202 App. Div. 251; *d'Altomonte* v. *N. Y. Herald,* 154 App. Div. 453; 208 N. Y. 596; *Snyder* v. *N. Y. Press,* 137 App. Div. 291; *Hart* v. *Woodbury, etc.,* 113 App. Div. 281.) The form of the publication cannot be relied upon to relieve defendant of liability. (*Sanderson* v. *Caldwell,* 45 N. Y. 398; *Sydney* v. *MacFadden Newspaper Pub. Corp.,* 242 N. Y. 208; *Witterman Bros.* v. *Witterman Co.,* 88 Misc. Rep. 266; *Corrigan* v. *Bobbs-Merrill Co.,* 228 N. Y. 58; *Husted* v. *Husted Co.,* 193 App. Div. 493; *Klaw* v. *N. Y. Press Co.,* 137 App. Div. 686; *Bresslin* v. *S. P. & P. Assn.,* 177 App. Div. 92; *Lawyers' Co-operative* v. *West Pub. Co.,* 32 App. Div. 585.) It is not necessary to plead special damage in order to charge the defendant with liability as for libel. (*Triggs* v. *Sun P. & P. Assn.,* 179 N. Y. 144; *Van Heusen* v. *Argenteau,* 194 N. Y. 309; *Carr* v. *Sun P. & P. Assn.,* 177 N. Y. 131; *Fleischman* v. *Bennett,* 87 N. Y. 231; *Caldwell* v. *Raymond,* 2 Abb. Pr. 193; *Blaisdell* v. *Raymond,* 4 Abb. Pr. 446; *Fry* v. *Bennett,* 5 Sandf. 54; *Stephens* v. *Patton,* 208 App. Div. 63; *Sydney* v. *MacFadden Newspaper Pub. Corp.,* 242 N. Y. 208.) The facts as alleged in the second cause of action herein pleaded fully and adequately state a cause of action under section 51 of the Civil Rights Act for defendant's infringement of plaintiff's right of privacy. (*Rhodes* v. *Sperry-Hutchinson,* 193 N. Y. 223; *Ellis* v. *Hurst,* 70 Misc. Rep. 122; *Meser* v. *Press Pub.*

Co., 59 Misc. Rep. 78; *Colyer* v. *Fox Pub. Co.,* 162 App. Div. 297; *Jeffries* v. *N. Y. Eve. Journal Pub. Co.,* 67 Misc. Rep. 570; *Almind* v. *Sea Beach Railway,* 157 App. Div. 230; *Binns* v. *Vitagraph Co. of America,* 147 App. Div. 783.)

*Charles B. Brophy* for respondent. The article complained of is not libelous *per se.* (*Corr* v. *Sun P. & P. Assn.,* 177 N. Y. 131; *Van Heusen* v. *Argenteau,* 194 N. Y. 309; *Crashley* v. *Press Publishing Co.,* 179 N. Y. 27; *Reporters' Association* v. *Sun P. & P. Assn.,* 186 N. Y. 437; *McNamara* v. *Goldan,* 194 N. Y. 315; *O'Connell* v. *Press Pub. Co.,* 214 N. Y. 352; *Cole* v. *Levy,* 212 App. Div. 84; *Triggs* v. *Sun P. & P. Assn.,* 179 N. Y. 144.) The second count of the complaint does not set forth a cause of action under the Civil Rights Law. (*d'Altomonte* v. *New York Herald Company,* 208 N. Y. 596; *Binns* v. *Vitagraph Co.,* 210 N. Y. 51.)

CRANE, J. This is an action for libel. The amended complaint has been dismissed for failure to state a cause of action. It alleges the following:

*First.* It alleges the plaintiff's occupation and profession. She is a professional lecturer, writer and teacher, specializing on the life and social customs of Palestine and Mosaic symbolism, sometimes designated, " The Symbolism of the Tabernacle." Out of this work she makes her living. Her livelihood is dependent upon her reputation as an authority on these subjects. In other words, this allegation in the complaint has the same legal force and effect as if it alleged that the plaintiff was a lawyer or a physician or scientist whose livelihood depended upon his standing in the community for skill, ability and integrity.

The complaint alleges in connection with the plaintiff's profession as a lecturer and writer on these subjects that she enjoyed a wide reputation for learning, historical

integrity, accuracy, and for trustworthiness in the presentation of facts. She is a Chautauqua lecturer on the life in Palestine. She lectures in the churches throughout this country and Canada on the customs and the social practices, and spiritual teaching under the Mosaic law. Her lectures and writings embody the result of personal, scientific research and study.

*Second.* The defendant, a newspaper corporation, so the complaint alleges, published on the 15th day of April, 1923, an article in its paper purporting to have been written by the plaintiff. It states that the article is her article, which is false — she never wrote it. This article states her views upon the social customs of Palestine under the Mosaic law, which the plaintiff also alleges are false. The statement written by her is more than an expression of her views and opinions; it contains her assertion of scientific or sociological facts, statements of customs and habits which the plaintiff says are false and untrue and known to every person familiar with the life in Palestine or with the Mosaic law as being false and untrue. These habits and customs which the defendant has published as facts stated by this plaintiff, relate to the Hebrew marriage and divorce, and the preparation or examination of the man and woman about to be united in wedlock. The article also contains a statement as a fact given by the plaintiff in relation to the ease with which divorce may be obtained. The plaintiff is published as having said, "After living many years in the Near East for the purpose of studying the real meanings of the Old Testament, and learning while there the customs and ideals and language of Palestine, I again affirm that they know perfect marriage and that we do not." There follows a statement regarding " The Symbolism of the Tabernacle "— " true and yet idealistic teaching of social hygiene that makes marriage in the Holy Land perfect." There then follows a statement of how the young Jewish boy of thirteen or fourteen who has amassed

a little money is prepared and examined for his bride, and likewise the methods of examination conducted upon the young girl who is about to take the young man for her husband. The description and wisdom of the matchmaker in Palestine in the examination of youths and maidens, that they may be properly mated, is then set forth: " He wants, perhaps, a slender little girl with black hair. The matchmaker searches her out and presenting her to the boy is able with a few skilled words to show him this is the very girl he has always visioned." In this fashion the article continues. Without quoting more, the complaint alleges in substance that the plaintiff has stated as of her knowledge, social customs and conditions regarding the ideal marriage and divorce in Palestine. She alleges in the complaint that these facts are absolutely false, ridiculous and grotesque; that such customs and habits do not exist; that she never made such statements or wrote such an article; and that the matters stated as facts are grossly false, and known to the defendant to be false.

*Third.* We now have in this complaint the plaintiff alleging herself to be a teacher and lecturer on life in Palestine and under Mosaic law; we have the defendant publishing an article " by Florence Ben-Oliel " which refers to her experience in the Holy Land, and represents her as stating facts about life and customs there which are absolutely false and untrue; that no such social customs exist. AND:—

We now have the damage. The statement of these facts as coming from a skilled traveler and observer makes her out ridiculous, a fraud, a deceiver and a charlatan. Everybody acquainted with life in Palestine knows that such customs do not and have not existed, and that the plaintiff, who represents herself in her profession as being historically accurate and learned on these subjects, is ignorant as well as stupid. In other words, the complaint alleges that the plaintiff makes her livelihood through her

reputation as a writer and lecturer on the life in Palestine under the Mosaic law; that the defendant has falsely printed an article by her which makes her out a deceiver, a falsifier, and holds her up to ridicule and derision in the eyes of all those in any way acquainted with the land, its people and its past.

In order to constitute a libel, it is not necessary for the defendant in its paper to directly attack the plaintiff as an ignorant imposter. The same result is accomplished by putting in her mouth or attaching to her pen words which make self-revelation of such a fact. One may say of a physician that he is an ignorant quack, or he may print a statement by the physician regarding some operation performed by him or some treatment of a disease which shows him to the profession to be an ignoramus and a bungler. Both of these publications would be libelous. This publication regarding the plaintiff is an attack upon her profession and livelihood, and is libelous without plea or allegation of special damage.

Suppose the defendant had published of the President or of the Governor of this State an article purporting to have been written by him, in which his views therein expressed were false and contrary to his avowed principles theretofore made known to the public, and further, that it contained statements of fact regarding public finances or prohibition or the tariff, which were grossly inaccurate and absurd and ridiculous in the eyes of those acquainted with governmental matters. Would not such an article be libelous?

The law of libel is very simple, and, briefly, is this: " ' Whatever words have a tendency to hurt, or are calculated to prejudice a man who seeks his livelihood by any trade or business, are actionable.' When proved to have been spoken in relation thereto, the action is supported, and unless the defendant shows a lawful excuse, the plaintiff is entitled to recover without allegation or proof of special damage, because both the falsity of the

words and resulting damage are presumed." (*Moore* v. *Francis*, 121 N. Y. 199, 204.)  To the same effect, *Cruikshank* v. *Gordon* (118 N. Y. 178); *Krug* v. *Pitass* (162 N. Y. 154); *Triggs* v. *Sun Printing & Pub. Assn.* (179 N. Y. 144); *d'Altomonte* v. *New York Herald Co.* (154 App. Div. 453; affd., 208 N. Y. 596); *Sanderson* v. *Caldwell* (45 N. Y. 398, 405); Gatley on Libel & Slander ([2d ed.], pp. 33–36).  To publish in the name of a well-known author any literary work, the authorship of which would tend to injure an author holding his position in the world of letters, has been held to be a libel.  (*Lee* v. *Gibbings*, [1892] 67 L. T. 263; Newell Slander & Libel [4th ed.], p. 39, note, p. 42.)

We are dealing here solely with the sufficiency of the complaint.  All of the things above stated the plaintiff has put in her complaint.  To make these allegations and to prove them are two separate and distinct things.  It remains for the plaintiff to prove them.  We now are holding that if the complaint be true, and these allegations established, then and only then does the plaintiff make out a cause of action.  The courts below have held that the complaint did not contain an actionable cause; we hold that it does.

The judgments should be reversed and defendant's motion denied with leave to defendant to answer within twenty days after service of a copy of the order to be entered upon the decision of this court.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.