CHARLES O. LOCKE, Plaintiff, *v.* BENTON & BOWLES, INC., Defendant.*

Supreme Court, Special Term, New York County, December 22, 1937.

*Mackey, Herrlich & Breen* [*Richard J. Mackey* of counsel], for the plaintiff.

*A. M. Davis* [*A. M. Davis* of counsel], for the defendant.

COTILLO, J. The defendant moves under rule 106 of the Rules of Civil Practice for an order dismissing the complaint upon the

---

* Revd., 253 App. Div. 369. See, also, *Locke* v. *Gibbons* (164 Misc. 877; affd., 253 App. Div. — ).

grounds that it fails to state a cause of action. The cause of action, if any, as presented by the complaint arises from a radio broadcast made by one Floyd Gibbons through station WLW of Cincinnati, Ohio, on January 28, 1937, purporting to describe conditions caused by the floods in that section. The plaintiff alleges that the defendant, an advertising corporation, employed the plaintiff, a newspaper reporter and newswriter active in radio work, having established a reputation for ability and accuracy, and well known for his newspaper and radio work, to write scripts for the broadcast, and Floyd Gibbons to broadcast from the plaintiff's script. On January twenty-sixth the plaintiff proceeded to Cincinnati, Ohio, to obtain first-hand information of the flood conditions for the purpose of preparing a script to be used by Gibbons, and spent January twenty-seventh and twenty-eighth in preparing the script from information obtained, which script contained an accurate account of the events which were taking place in Cincinnati and delivered the script to Gibbons on the morning of January twenty-eighth. On January twenty-eighth defendant represented to the public that it was about to broadcast an accurate news description of conditions existing on that day in the city of Cincinnati, which had been partially inundated by a flood, and represented that the plaintiff was the author of the subject-matter of the Gibbons broadcast, whereas in truth the subject-matter of the broadcast so delivered by Gibbons was only partially the work of plaintiff, and in certain substantial particulars improper and serious interpolations had been inserted in said script by defendant, which interpolations were improper, misleading to the public and very damaging to plaintiff's reputation as a writer and accurate news reporter, and were misstatements created for the purpose of making melodramatic situations and falsely indicating that sensational happenings were taking place at the scene of the broadcast. It is alleged in the complaint that they were a deliberate attempt to magnify and create melodramatic incidents of the suffering of the people of Cincinnati and were injurious to the business conditions then prevailing in Cincinnati. The following interpolations were inserted in plaintiff's script by the defendant and were false and untrue: (a) Gibbons falsely stated that he was reading the script by the light of a railroad lantern, whereas in truth and in fact he was sitting reading the script by the light furnished in the studio; (b) the statement by Gibbons in substance and effect was that at any moment the emergency power under which he claimed the broadcast was being given might be shut off and he might have to discontinue the broadcast; that this was false, as the broadcast was not given under any such emergency conditions; (c) the state-

ment by Gibbons that by listening the radio audience could hear the roar of water throughout the Cincinnati streets, when in truth and in fact no roar of water existed at that time and that Gibbons produced the noises heard by the audience through sound effects in the studio; (d) the statement by Gibbons that he was actually talking to a diver who was located approximately five miles away under twenty feet of water was false, as Gibbons was talking to an actor who was standing beside him in the studio talking through a lard can; (e) the statement by Gibbons that the telephone girls in Cincinnati, who at that time were answering calls, were standing ankle deep in water, was false, as the building in which the telephone girls in Cincinnati were operating at the time was approximately a mile from the flood and not subjected to any such conditions; (f) the statement by Gibbons that an actor who had been hired for the purpose was really a young man who had lost his wife and children in the flood and who had come there to interrupt the broadcast for the purpose of obtaining assistance in locating his family; (g) the inference by Gibbons that the town of Hickman, Ky., which is a very substantial distance from Cincinnati, was directly across the river from Cincinnati; (h) the statement by Gibbons that most of the past events which had been chronicled in the script prepared by the plaintiff in the past tense were actually happening in the present tense. That all interpolations were made by defendant and Gibbons, and that Gibbons, in making such changes, was acting in the course of defendant's business with its full knowledge and under its orders and authority, and that by reason of defendant's interpolations in the script and the false representations that plaintiff was the author thereof, plaintiff was permanently damaged, his business reputation ruined, his reputation as an accurate reporter and newswriter for radio damaged, his ability to earn a livelihood was injured, perhaps permanently obliterated, in the radio field, and he has lost employment and been damaged in his reputation, all to his damage in the sum of $250,000. On a motion under this section all the facts alleged in the complaint must be deemed to be true.

The defendant, in urging the dismissal of the complaint, relies upon a line of decisions that hold that a complaint in libel or slander that does not set forth the exact words of defamation is demurrable or dismissible on motion, if no special damage is alleged. With these decisions in ordinary libel or slander actions there can be no dissent. However, the cause of action alleged in the present complaint is not an ordinary libel or slander. The plaintiff complains that the false interpolations in his script and the publication of the script as his is the libel.

Judge (now Chief Judge) CRANE in *Ben-Oliel* v. *Press Publishing Co.* (251 N. Y. 250, at p. 255) has succinctly and ably stated the law as pertinent to actions of this type as follows: " In order to constitute a libel, it is not necessary for the defendant in its paper to directly attack the plaintiff as an ignorant impostor. The same result is accomplished by putting in her mouth or attaching to her pen words which make self revelation of such a fact. One may say of a physician that he is an ignorant quack, or he may print a statement by the physician regarding some operation performed by him or such treatment of a disease which shows him to the profession to be an ignoramus and a bungler. Both of these publications would be libelous." The publication in that case was one similar to the one in the present case. The defendant had published an article alleged to have been written by the plaintiff, a professional lecturer, writer and teacher, specializing on the life and customs of Palestine and Mosaic symbolism, which, if written by her, would have shown to the world that she was a deceiver and falsifier, and thus, the court held, she was held up to ridicule and derision in the eyes of all those in any way acquainted with Palestine. The Court of Appeals held the publication to be an attack upon plaintiff in her profession and livelihood and to be libelous without plea or allegation of special damage. To the same effect is *D'Altomonte* v. *New York Herald* (154 App. Div. 453; affd., 208 N. Y. 596).

The question whether this complaint is to be treated as one in libel or in slander is one which need not be decided on this motion.

Motion to dismiss is denied, with ten dollars costs, with leave to defendant to serve its answer within ten days after the service of a copy of this order, with notice of entry.