BENJAMIN GERSHWIN, Plaintiff, *v.* ETHICAL PUBLISHING CO., INC., Defendant; GOFF P. LILLY, Impleaded Defendant.

City Court of New York, Trial Term, New York County, December 31, 1937.

*John W. Benjamin*, for the plaintiff.

*H. David Frackman*, for the defendant Ethical Publishing Co., Inc.

*Hyman Wolf*, for the impleaded defendant Goff P. Lilly.

RYAN, J.   Action tried by the court without a jury.   The complaint alleges that the plaintiff is a duly licensed member of the medical profession of the State of New York; that the defendant Ethical Publishing Co., Inc., is the owner of a magazine called *American Medicine*, and that said defendant published an article in that magazine appearing in the November, 1935, issue entitled "Therapeutic Uses of Collodial Sulphur," and falsely attributed said article to the plaintiff.   Prior to the trial Goff P. Lilly was brought in as a party defendant.

It was brought out at the trial that the plaintiff is professionally associated with several hospitals and teaches internal medicine at the Cumberland Hospital in Brooklyn and has written several

articles which appeared during the year 1934. He further testified that he did not write or have anything to do with the above-mentioned article published under his name, and that many references to said article were made to him by friends and professional acquaintances after the publication thereof, and claimed that the same held him up to ridicul. and contempt in his profession, and that the same was libelous *per se*. No claim for special damages was pleaded.

Dr. Lilly, the only witness called by the defendants, testified he had prepared the article referred to, and that the plaintiff had had nothing to do with its preparation; he further stated he had asked the plaintiff to write an article on collodial sulphur, but that he had refused to do so, saying the time was not ripe for a definite statement on its uses. Dr. Lilly also testified he was interested in a chemical company that was sponsoring such a product, and expected in due time to be appointed by such company to a position with a salary, and that he had a definite interest in advertising that particular product, and admitted he had read the galley proofs of the article in question before its publication.

A reading of the published paper leads me to the conclusion that the plaintiff's criticism is well founded. In that article we find a number of case histories of persons mentioned by the author. For example: A Mrs. B. L., fifty-four years of age, had been walking with a cane for four months, and after four injections of collodial sulphur was " able to dance all night." Mrs. J. R., aged sixty-four years, with acute sciatica, and that after twenty-five treatments was able to " push a baby carriage two miles." Mr. J. A., age twenty-four years, was suffering from a carbuncle for three days and unable to work; he was able to return " to strenuous labor six days after his first injection."

The plaintiff did not believe that the product was ready for general application; consequently, he objected to having his name associated with such advertising, and considered the publication contrary to professional ethics. The article was falsely attributed to the plaintiff, and it seems to me its advertising characteristics would hold him up to severe criticism in his profession.

The question arises: Is the illegal and unauthorized use of plaintiff's name to such an article libelous *per se?* In the case of *Ben-Oliel* v. *Press Pub. Co* (251 N. Y. 250) the court sustained a complaint on demurrer on the ground it was a libel *per se* that falsely attributed the publication of an article under the plaintiff's name concerning certain marriage customs of young boys and girls in Palestine, which were untrue.

In another case the Court of Appeals affirmed the Appellate Division in sustaining a complaint on the theory it was libelous *per se* to publish an article recounting foolish and untrue statements concerning Africa and falsely stating that the plaintiff was the author. (*D'Altomonte* v. *New York Herald Co.*, 154 App. Div. 453; modfd., 208 N. Y. 596.) The English co ... is have held the same doctrine.

In *Ridge* v. *English Illustrated Magazine* (29 T. L. R. 592 [1913]), Mr. Justice DARLING charged the jury that if they found the article in question falsely published as emanating from the plaintiff and held him up to public view as " a mere scribbler " they could give him damages. The jury returned a verdict in favor of the plaintiff for £150, which the court reduced to £100.

In another case: The plaintiff was a barrister who had written a book on practice and had sold the copyright to the defendant. The defendant, however, published a third revised edition falsely attributing the publication to the plaintiff. The jury returned a verdict for the plaintiff. (*Archibold* v. *Sweet*, 174 Eng. Rep. 55. See, also, the cases of *Walter* v. *Ashton*, L. R. [1902] 2 Ch. Div. 282; *Clark* v. *Freeman*, 50 Eng. Rep. 759, and *Lee* v. *Gibbings*, 67 L. T. R. 263.)

It follows, therefore, that the article published by the defendant is libelous *per se*, and that no special damages need be alleged or proved.

This is not a case wherein exemplary damages may be awarded, and we must concern ourselves with the question of nominal or compensatory damages. With respect to the former, the case of *Sanderson* v. *Caldwell* (45 N. Y. 398) is illuminating. At page 406 the court, by ANDREWS J., said: " The plaintiff was entitled to be compensated for the injury to his reputation, caused by the wrongful publication. * * * In such a case a nominal verdict would have been a denial of justice, and the court was not bound to assent to the suggestion of the defendant that such a verdict might be given. Nor would such a verdict have been a vindication of the plaintiff. It would have established that the charges were false, but at the same time it would have left it to be inferred that the plaintiff had no character to lose."

It would not.be fair to infer in the case under consideration that the plaintiff " had no character to lose." On the contrary, the plaintiff made an impressive witness, appeared to be sincere in the practice of his profession and imbued with the proper respect for medical ethics.

Therefore, it seems to me he is entitled to compensatory damages, basing same on the nature of the libel, the social and professional

position of the plaintiff and the tendency to injure the plaintiff in the public estimation of his character. (*Gressman* v. *Morning Journal Assn.*, 197 N. Y. 474.)

Accordingly, judgment is directed in favor of the plaintiff and against the defendant Ethical Publishing Co., Inc., in the sum of $250; and that the Ethical Publishing Co., Inc., have judgment over against Goff P. Lilly, the impleaded defendant, in the sum of $250.

Appropriate exceptions allowed. Fifteen days' stay and thirty days to make a case.