EVA HARRISON, as Executrix of CHARLES Y. HARRISON, Deceased, Plaintiff, v. WALTER WINCHELL et al., Defendants.

Supreme Court, Special Term, New York County, January 5, 1955.

*Benjamin Aslan* for plaintiff.

*Charles Henry* and *Harvey L. Lipton* for defendants.

MATTHEW M. LEVY, J.  The defendants move after answer for judgment dismissing the complaint (Rules Civ. Prac., rule 112). The action is for libel.  It appears that the original plaintiff died subsequent to the commencement of the action, and that suit is being proceeded with by his executrix.  For purposes of convenience, I shall hereafter refer to the plaintiff as if there had been no change of parties.

It is alleged in the complaint that the plaintiff's vocation is that of " professional writer, novelist, biographer, public relations consultant and publicity director ", that the plaintiff has " a wide and extensive reputation " in his chosen calling as " capable and honest ", that the " plaintiff's livelihood depends upon maintaining said reputation as an accurate and trustful narrator of factual information ", and that among the persons and organizations by whom the plaintiff was engaged was Local No. 3 of the International Brotherhood of Electrical Workers of the American Federation of Labor, of which one Van Arsdale was the business manager.  It is alleged further that the defendants, combining falsely and maliciously to injure the plaintiff, published the following of and concerning him: " Life settled out of court with labor leader Van Arsdale over Chas. Yale Harrison's [the plaintiff's] ' Van Arsdale's Tight Little Island ' piece of a few seasons ago.  Paid him $17,500."

No special damages are alleged.  The claim is made by the plaintiff that the publication is libelous per se, upon the ground that by such publication the meaning was intended to be conveyed that the plaintiff's article about Van Arsdale published in *Life Magazine* resulted in an action or claim for libel against the magazine, which was settled by the payment of a substantial sum of money to Van Arsdale, and that in consequence the impressions were obtained that the plaintiff had committed a crime by having delivered a libelous article to *Life Magazine* with the intention that it be published (Penal Law, § 1349), and

that plaintiff was a grossly careless, immoral, inept and incompetent writer and public relations consultant.

It may be, as claimed by the defendants, that some truly extrinsic facts are pleaded in the complaint — and, as no special damages are claimed, the allegations of such facts are extraneous (cf. *Lasky* v. *Kempton,* 206 Misc. 962). And some of the innuendoes that are alleged seem to me to be somewhat far-fetched. Thus, the claim that the item in the defendants' column is reasonably susceptible of the inference that the columnist charged the plaintiff with crime, in that he was guilty of criminally libeling Van Arsdale, is an allegation that I shall disregard. Were this a corrective motion addressed to the pleading (e.g., under Rules Civ. Prac., rule 102 or 103), much of what the defendants have urged in their argument would be relevant. But on the present application — a motion for judgment on the pleadings — I must (in an action for libel as in other types of cases) take the complaint as it is, and not only assume it to be true, but construe it liberally, invoke every inference in its favor, make all reasonable implications to support it, and interpret it if possible so as to sustain the cause of action (*Solomon* v. *La Guardia,* 267 App. Div. 435, 436, motion for leave to appeal to the Court of Appeals denied, 267 App. Div. 957; *Bentrovato* v. *Crinnion,* 206 Misc. 648).

The question now to be resolved by the court is — is the publication, in the light of the proper innuendoes alleged in the complaint, libelous per se? I see no need to include in this opinion an analysis of the many precedents, pro and con, cited to me on this point. Each case must be decided on its own, for not often are claimed defamatory statements in precisely the same language or to be considered in exactly the same factual framework. I am of the view that a permissible innuendo in the case at bar is that *Life Magazine* was compelled to and did buy its peace because of a wrong done by the plaintiff with respect to the article written by him and published in the magazine. At least, it is fair to say that the published statement *might* not unreasonably lend itself to that construction. That the settlement of a claim may be and frequently is made without reference to its verity or validity is of course quite true. Because of this possibility, coupled with judicial interest in facilitating compromises, an offer to settle is not, in a lawsuit between the parties, receivable in evidence as an admission of liability (4 Wigmore on Evidence, § 1061, p. 28). But it does not follow that, when one publishes that another made a substantial payment in compromise of an action, there are no circumstances

whatever under which it is conceivable that the settlement was entered into because of the truth or justice of the claim, rather than to buy one's peace, irrespective of merit. If, as I see it, the statement published by the defendants is susceptible of two meanings — one defamatory and one nondefamatory — the adoption of the proper meaning in the light of all the facts would be a matter for the determination of the jury (*Cooper* v. *Rochester Ice Cream Co.,* 212 N. Y. 341).

I think it fair to say, too, that a statement that a periodical, which had printed an article written by the plaintiff, had paid a substantial sum of money in an out-of-court settlement to the one who was the subject of that article — and because of it — is a charge which would naturally tend adversely to affect the plaintiff's standing in his calling. As to this, I think it will suffice to quote what Judge CRANE wrote for the Court of Appeals in *Ben-Oliel* v. *Press Pub. Co.* (251 N. Y. 250, 255–256): " The law of libel is very simple, and, briefly, is this: ' Whatever words have a tendency to hurt, or are calculated to prejudice a man who seeks his livelihood by any trade or business, are actionable.' When proved to have been spoken in relation thereto, the action is supported, and unless the defendant shows a lawful excuse, the plaintiff is entitled to recover without allegation or proof of special damage, because both the falsity of the words and resulting damage are presumed."

Two other matters require some comment. One has to do with what may be called the " single instance libel ", and the other with the so-called " extrinsic fact " of the plaintiff's status. Let me consider these separately.

It is claimed by the defendants that where a publication charges one with want of skill in " a single instance ", it is not actionable in the absence of special damages. The principal authority submitted in support of this contention is *Twiggar* v. *Ossining Print. & Pub. Co.* (161 App. Div. 718, appeal dismissed 220 N. Y. 716), where a number of cases is cited. While I shall assume, for present purposes, that the rule is still to be followed today, I must note that Judge CRANE, on behalf of the Court of Appeals, pointed out that " One may say of a physician that he is an ignorant quack, or he may print a statement by the physician regarding some operation performed by him or some treatment of a disease which shows him to the profession to be an ignoramus and a bungler. Both of these publications would be libelous " (*Ben-Oliel* v. *Press Pub. Co.,* 251 N. Y. 250, 255, *supra*).

Even if the rule is sound (but see Seelman on Law of Libel and Slander, § 23), it is subject to the limitation that although in words directed to a single case, the objectionable publication may imply general unskillfulness or general ignorance in the plaintiff's calling (cf. *Cruikshank* v. *Gordon,* 118 N. Y. 178). Moreover, the publication in the case at bar may indicate that what the plaintiff did on this one occasion was not the result of mere lack of skill or the absence of knowledge (as in *Smith* v. *Staten Is. Advance Co.,* 276 App. Div. 978), but because of willful, deliberate conduct showing him to be unqualified to continue his profession thereafter (as in *Smith* v. *Buffalo Times,* 124 Misc. 495, affd. 214 App. Div. 759). It seems to me that under the facts alleged in the instant case it is proper to leave it to the jury to determine whether the charge implicit in the publication complained of does tend to injure the plaintiff in his vocation.

The final matter entitled to consideration is whether the allegations in the complaint as to plaintiff's calling are allegations of such " extrinsic facts " (within the meaning of that term of art in the law of libel) as to require pleading and proof of special damage in order that the complaint may be held sufficient to set forth a cause of action in libel. Whatever may be the thought expressed in other quarters, I am of the view that a plaintiff's status is not such an " extrinsic fact ". For example, in certain States, to publish that the plaintiff is a Negro or colored is actionable without pleading special damage, where the so-called extrinsic fact is pleaded that he is in fact a white man (*Upton* v. *Times-Democrat Pub. Co.,* 104 La. 141; *Flood* v. *News & Courier Co.,* 71 S. C. 112; *Stultz* v. *Cousins,* 242 F. 794). In New York, an instance that comes to mind is presented in *Smith* v. *Smith* (236 N. Y. 581), where the defendant stated that he was making his first application for a license to marry and that he had never been divorced; the plaintiff, suing for libel, alleged that in fact she had been married to the defendant for many years and then divorced, and that the matter published by the defendant thus signified that the defendant had never been married to the plaintiff and never divorced from her, and it was accordingly a libelous charge that she had been living with the defendant as his mistress in meretricious relationship. The plaintiff's status was a so-called " extrinsic fact " — but the Appellate Division and the Court of Appeals held the publication libelous per se and the complaint sufficient without proof of special damage.

I see no difference in principle between an allegation as to the nonpublished fact of plaintiff's race or matrimonial status and the nonpublished fact of plaintiff's business or profession (see *Morey* v. *Morning Journal Assn.*, 123 N. Y. 207). Both are facts dehors the publication. Both are so-called extrinsic facts, but in my view neither is such an " extrinsic fact " as to require special damage to be pleaded and proved before an action for libel will lie. (See *Ferrand* v. *Brooklyn Daily Eagle & Tri-Co. Pub. Corp.*, N. Y. L. J., Dec. 5, 1933, p. 2100, col. 2, affd. 241 App. Div. 752, motions for leave to appeal to the Court of Appeals denied, 241 App. Div. 816; *Spector* v. *News Syndicate Co.*, 280 N. Y. 346; and Seelman on Law of Libel and Slander [ch. II, 1941 Supp.], pp. 20–23.)

Of course, by way of denial or defense, if pleaded, many issues may remain — such as the truth of publication or innuendo, whether or not a settlement was in fact made and why, as to newsworthiness, fair comment, privilege and other matters. What I hold here is that the present motion by the defendants for judgment on the pleadings dismissing the complaint because of alleged insufficiency on its face must be and is denied.

Order signed.