Froessel, J.
The sole issue before us on this appeal is whether the complaint states facts sufficient to constitute any cause of action. Under familiar rules, we must accord the complaint a liberal construction (Civ. Prac. Act, § 275), and if it states, in some recognizable form, any cause of action known to our law, then it was improperly dismissed below (Dulberg v. Mock, 1 N Y 2d 54, 56; Al Raschid v. News Syndicate Co., 265 N. Y. l, 3).
According to the complaint, plaintiff has been a member of the Bar since 1912, ‘ ‘ is the author of 86 Law Books of approved *189 merit”, and “has edited 500 Practice Annuals”. In 1922 he wrote and published “ Clevenger’s Annual Practice of New York”, and the following year sold this work, together with copyright, to defendants. From 1923 to 1956 he edited the annual editions of the work, and ‘ ‘ by careful and competent annual Revision * * * achieved state-wide reputation of being a reliable Editor of reliable guide to New York Practice ”. In 1956 he ' ‘ terminated his editorship ’ ’ and ' ‘ revoked his consent to use of his name as Editor of any later Edition thereof ’ ’.
Notwithstanding that termination and revocation, the published 1957 edition of the work stated on the title page, below the words “ Annually Revised ”, that it had been edited and annotated by plaintiff. In November, 1957 defendants issued a ‘ ‘ Title Page Correction ’ ’ in the form of a gummed sheet reading:
“ 1922-1956 Revisions by Jos. R. Clevenger, A.B., LL.B 1957 Revision by Publisher’s Editorial Staff ”, and instructed its subscribers to paste this sheet over the words reading: “ Edited and Annotated by Jos. R. Clevenger, A.B., LL.B of the New York City Bar ”. According to the complaint, the format of this title page correction was in accord with defendants’ publishing practice and we judicially notice the fact that the title pages of the latest annual supplements to such leading works as Gilbert-Bliss and Cahill-Parsons (published by defendants herein), Carmody-Wait (copublished by one of the defendants herein), Nichols-C'ahill, Williston on Contracts, and Wigmore on Evidence, among others, all state that the annual supplement was edited or prepared by the publisher’s editorial staff, or by a named individual or individuals.
In 1959, “ without plaintiff’s consent or approval ”, the work was published with a title page that read, in pertinent part, as follows:
“ Clevenger’s Annual Practice of New York * * * 1959 Annually Revised ”
The 1959 edition was in fact revised by defendants’ editorial staff, not by plaintiff, and it is alleged that ‘ ' defendants pur *190 posely excluded from title page of 1959 Edition all names except plaintiff's name of ' Clevenger's' in order to mislead Lawyers to believe erroneously that plaintiff edited said 1959 Edition because they could see only the name ‘ Clevenger’s ’
The complaint further alleges that there were ' ‘ over 200 misleading Errors of omission and commission in Texts of Practice Acts and Court Rules ” in the 1959 edition, which are specifically alleged by section and rule number, and which allegedly consisted of omitting parts of amended sections and rules, omitting names of counties authorized to collect fees, misdescribing amendments, omitting or misstating effective dates of sections added or amended, omitting many current citations, and misstating, misclassifying and misapplying annotations, By virtue of the misleading format of the title page, ‘ ‘ many Lawyers and Law Librarians ' ’ attributed these errors to plaintiff, causing him to feel disgraced, dishonored and humiliated, and irreparably impairing his * ‘ reputation as Lawyer and Law Writer, laboriously built up by careful and competent work over a period of fifty years ”, with the result that he ‘ ' has lost all employment, for first time in his lifetime, and can no longer obtain employment ”, The complaint seeks compensatory and exemplary damages in the sum of $200,000.
We agree with the dissenting Justices in the Appellate Division that the complaint states a cause of action in libel. The gravamen of the wrong pleaded is that the numerous errors of omission and commission in the 1959 edition of the work, impliedly attributed to plaintiff by the misleading format of the title page, have ‘‘ irreparably impaired” his otherwise excellent reputation as a reliable legal writer and lawyer. Since a jury could reasonably find that the wording and arrangement of the title page in question would mislead the reader to believe that the revision work had been done by plaintiff, the facts pleaded amount to actionable defamation. As this court noted in Ben-Oliel v. Press Pub. Co. (251 N. Y. 250, 256): “ To publish in the name of a well-known author any literary work, the authorship of which would tend to injure an author holding his position in the world of letters, has been held to be a libel. (Lee v. Gibbings [1892], 67 L. T. 263; Newell Slander & Libel [4th ed.], p. 39, note, p, 42.) ” (See, also, d’Altomonte v. New York *191 Herald Co., 154 App. Div. 453, mod. and affd. 208 N. Y. 596; Locke v. Benton & Bowles, 253 App. Div. 369.)
The doctrine enunciated in the Ben-Oliel case (supra) has deep roots in the common law, and the case of Archbold v. Sweet (5 Car. & P. 219,172 Eng. Rep. 947; 1 Moo. & Rob. 162,174 Eng. Rep. 55), decided by an English court in 1832, is practically on all fours with the present case. (See, also, Lee v. Gibbings, 67 L. T. 263, 264-265.) Archbold, a well-known legal writer of the time, was the author of a text on criminal pleading and evidence. After editing two editions of the work, he sold the copyright to the defendant who published a third edition thereof, not edited by Archbold, with the following title page: “A Summary of the Law relative to Pleading and Evidence in Criminal Cases, with Precedents of Indictments, &c., and the Evidence necessary to support them. By J. F. Archbold, Esq., Barrister at Law. Third Edition, with very considerable Additions, including Lord Lansdowne’s Act, &c.”
This third edition contained many inaccuracies, and Archbold brought an action for damages, claiming that many members of the legal profession had attributed the editorship of the third edition to him, and that he was thereby " greatly injured in his reputation ” as a barrister and a legal author. Defendant moved for a nonsuit, arguing, in much the same vein as defendants here, that, having purchased the copyright, he had a perfect right to publish the third edition, and that the mere failure to indicate the name of the actual editor of the third edition was not actionable. In refusing to nonsuit plaintiff, the court noted (5 Car. & P., supra, pp. 224-225): “ Taking up this title page and reading it, I should certainly feel satisfied that the third edition was by Mr. Archbold,” The case was submitted to the jury, who were instructed, in pertinent part, as follows (5 Car. & P., p. 227): “ The question of fact is this, whether the third edition would be understood by those who bought it to be the work of the plaintiff; for, if so, I think the errors are such as would be injurious to the plaintiff’s reputation.”
The crux of the Archbold decision was that the title page was so worded and arranged as to convey to the reader the erroneous impression that the latest edition was the sole work of Mr. Archbold, since his was the only name that appeared thereon *192 as author. That is precisely the claim advanced by the plaintiff here. The fact that Clevenger’s name preceded, rather than followed, the title of the work is hardly a controlling distinction, since the nub of the claimed defamatory misrepresentation in the present case, as in the Archbold case, is that the only person identified on the title page as having anything to do with the writing of the work is the plaintiff. Defendants herein, like the defendant in the Archbold case, had a perfect right to state that plaintiff was the author of the original text, but the purchase of the copyright did not carry with it a license to defame by impliedly misrepresenting plaintiff as reviser of an annual edition that contained many inaccuracies and with which he had nothing to do.
As to the theories other than defamation mentioned in the briefs and in the opinions below, we do not think the pleaded facts properly support any of them.
The judgment appealed from should be reversed, and the order of Special Term denying defendants’ motion to dismiss the complaint reinstated, with costs in this court and in the Appellate Division.
Chief Judge Desmond and Judges Dye, Fuld, Van Voorhis, Burke and Foster concur.
Judgment reversed, etc.