### JONES v. AMERICAN LAW BOOK CO.

(Supreme Court, Appellate Division, First Department. April 10, 1908.)

1. LITERARY PROPERTY—CONTRACT—CONSTRUCTION.

Plaintiff agreed for the period of one year to write and prepare for defendant law book company, at a specified price per page, original articles or parts of articles on topics of the law assigned to him by defendant, any articles so prepared to be subject to editorial changes, even to the extent of the rejection of any portion thereof. The contract further provided that plaintiff reserved no right to republish any articles so written and prepared, and that defendant should become the sole owner of the copy-

right thereof. *Held*, that whatever the plaintiff produced under this contract defendant was under no obligation to publish under plaintiff's name as author, though it could if it saw fit.

2. CUSTOMS AND USAGES—REFERENCE TO OR INCORPORATION OF CUSTOM IN MAKING CONTRACT.

A custom among publishers of publishing the names of authors of articles could not be read into a contract to write articles without proof that writers for other publications were under similar contracts, or that the parties contracted with reference to such custom.

Appeal from Special Term, New York County.

Action by Basil Jones against the American Law Book Company. From the judgment, defendant appeals. Reversed, and new trial ordered.

The following is the contract in suit:

"This Agreement made this fourth day of March, nineteen hundred and one, between the American Law Book Company, party of the first part, and Basil Jones, party of the second part, witnesseth:

"That said company has this day employed said Basil Jones to render services in writing articles on subjects of law to be published by said party of the first part.

"The term of employment fixed by this Agreement is one year, to commence March 4th, 1901.

"That the said party of the first part hereby covenants and agrees to pay the said party of the second part the sum of five dollars and 60/100 per printed page of the Cyclopedia of Law and Procedure.

"That in consideration of said sum so agreed to be paid during the life and continuance of this contract, the said party of the second part hereby covenants and agrees:

"(1) To write and prepare original articles and treatises or parts of articles and treatises on subjects and topics of the law, said subjects and topics to be assigned to said party of the second part by said party of the first part, for the period of one year, commencing on the fourth day of March 1901, and ending on the fourth day of March, 1902.

"(2) To work faithfully and diligently eight (8) hours each business day of each week, to wit: from 9 o'clock a. m. until 5:30 o'clock p. m., exclusive of one half hour during said time each day, it being understood by both of said parties that the term 'business day' as used in this contract, shall not include Sundays, legal holidays, or Saturdays, after 1 o'clock p. m., or a two weeks' vacation, at a time during the life and continuance of this contract, as shall be most convenient to both parties; but such vacation shall not occur prior to six months' service of the party of the second part.

"(3) To write and prepare said articles or parts of articles in such a manner and of such a quality as to come up to the proper standard for publication in the Cyclopedia of Law and Procedure, it being understood by both parties that the party of the first part reserved the right to make editorial changes in the manuscript of any articles or parts of articles written and prepared by said party of the second part under the terms of this contract, and that this right shall extend to the rejection of any portion of the manuscript which in the opinion of the said party of the first part does not come up to the proper standard for publication, or cannot be used therefor.

"(4) To warrant the said party of the first part against any and all liability for infringement of the copyright of published works, especially the American & English Encyclopædia of Law, the American & English Encyclopædia of Law (Second Edition), the Encyclopædia of Pleading and Practice, and the Encyclopædia of Forms and Precedents; and in the writing and preparation, or during the writing and preparation, of any article, or parts of articles, so assigned to said party of the second part, as hereinabove mentioned, not to use, consult, or look into for any purpose, the said American & English Encyclopædia of Law, the American & English Encyclopædia of Law (Second

Edition), the Encyclopædia of Pleading and Practice, or the Encyclopædia of Forms and Precedents.

"(5) To reserve no right to republish any articles, or parts of articles so written and prepared by said party of the second part, it being understood by both of said parties that said party of the first part shall become the sole owner of the copyright of said articles, and parts of articles so written and prepared.

"This contract terminates and revokes at the date herein, any and all previous arrangements between party of the first part and party of the second part.

"In witness whereof, the parties hereto have signed this agreement in duplicate, the day and year first above written.

"The American Law Book Co.,
"By C. W. Dumont, Pres.

"Witness:  E. G. Simmons.          Basil Jones."

## The following is the opinion of the court below:

McCALL, J.   This is an action on the equity side of the court in which the relief sought is an injunction against the defendant restraining it from publishing an article entitled "Army and Navy," found in volume 2 of defendant's publication entitled "Cyclopedia of Law and Procedure," except under the plaintiff's name.   The said article, it is claimed, was prepared and written by the plaintiff while under contract with the defendant to do work of this precise nature, and the grounds upon which the plaintiff asserts he is entitled to the relief prayed for are:  First. That a custom or usage in the publication of law encyclopedias was a part of the contract entered into as between the parties herein,.and as such gave plaintiff a contractual right to have his article published under his name.   Second. That irrespective of any custom or usage the right of an author to the public credit of his work and to the publication of his name in connection therewith is inherent and resides in him until waived or surrendered.

It may be accepted that the right to literary property is as sacred as that of any other species of property, and as has been forcibly said:  "The right of authors in respect to their unpublished works have been so frequently and elaborately considered and carefully adjudicated by the courts of this country and England and are now so well understood that in considering first publications there can be no doubt.   The author of a literary work or composition has by law a right to the first publication of it.   He has a right to determine whether it shall be published or not, and if published, when, where, by whom and in what form."   These rights were vouchsafed to authors at common law and statute has in no wise impaired them.   What is true as general propositions is not at all altered by the fact that the creation of a man's genius or mind may have developed while he was in the general employ of another; "for a man's intellectual productions are peculiarly his own and he will not be deemed to have parted with his right and transferred it to his employer unless a valid agreement to that effect is adduced."   Boucicault v. Fox, 5 Blatchf. (U. S.) 95, Fed. Cas. No. 1,691.   There is nothing in the contract before the court out of which can be spelled any such waiver.   It is true that he stipulated that whatever he produced should be submitted to a process of editing, but it would be a wide stretch of the imagination that would work out of that proposition a sale or waiver of his rights to ownership to or credit for the results of his labor.   The case is replete with evidence of a custom developed almost into usage of the right of this particular class of writers to have their productions published under their names.   This defendant's published volumes teem with such instances, and this particular author, plaintiff herein, has his first article published under his name.   That he wrote a letter of thanks to the representative of the publisher for so doing is rather a proof of his understanding of proprieties, and it would be absurd to treat it as an expression of any views that he was treated in any other manner than he had a perfect right to expect.

Some proof has been offered that this particular article is not solely the work of the plaintiff.   That may or may not be true, but to protect a person under such circumstances the law does not require that it should be his ex-

clusive work. The work may be the result of the labors of one or many acting in co-operation. Whatever may be the case, the right is substantially the same and equally entitled to protection of the court. French v. Maguire, 55 How. Prac. 479. Upon all the facts I believe the plaintiff has made a complete case and is entitled to the relief he prays for.

Decree and findings to be submitted accordingly.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

William B. Hale and William J. Wallace, for appellant.
Archibald R. Watson, for respondent.

HOUGHTON, J. The defendant is engaged in the compilation and publication of the "Cyclopedia of Law and Procedure," and the plaintiff entered into a contract with it whereby he agreed for one year, at $5.60 per page, to write and prepare original articles and treatises, or parts of articles and treatises, on subjects and topics of the law selected and assigned to him by the defendant. The contract further provided that the plaintiff should work continuously during certain hours of each business day, and that whatever articles or parts of articles he might prepare should be subject to editorial changes, even to the extent of the rejection of any portion of his manuscript. The concluding part of the contract provides that the plaintiff "should reserve no right to republish any articles or parts of articles so written and prepared, * * * it being understood by both of said parties that said party of the first part (defendant) shall become the sole owner of the copyright of said articles and parts of articles so written and prepared." Under this contract the plaintiff prepared for the defendant's publication, and by its direction, an article entitled "Army and Navy." The article so prepared by the plaintiff was largely changed in the editing, and appeared in the defendant's publication without the plaintiff's name as author; the only statement as to the authorship being the statement that it was edited by Henry A. Sharpe, Associate Justice Supreme Court of Alabama. Thereupon plaintiff brought this action to restrain the defendant from publishing the article unless his name be substituted as author, and the statement that the article was edited by Henry A. Sharpe be eliminated. The plaintiff recovered a judgment to that effect.

We think the plaintiff's contract is such that he is not entitled to the relief which he has obtained. He does not claim, and cannot claim, any right in the published article or any right to publish it himself in any form, for he relinquished all rights of that description to defendant. He insists, however, that he has the right to have his name appear as author. The reasonable interpretation of the contract precludes him from this right. He entered into the defendant's employ for a stated period to work stated hours each business day, and to prepare and write any article or part of any article, or do anything with respect to preparing an article for publication which the defendant might direct. Anything which he did prepare he consented might be edited in any manner the defendant desired. Such a contract is very different from one with an author to write a book or a play, even though it is to be produced within a given time, and to be paid for at so much a

page. Such a contract could very well be considered as contemplating that the author should have his name appear, and thus enjoy whatever reputation the learning or brilliancy of the work might give him, although he retained no right of future publication. Of course, an author is entitled to his own productions. The manuscript is his own. He may retain it, or publish it, or sell it. He may sell it in such a way that his name shall appear as author. He may also agree to work in such a manner that the right to have his name appear as author will be lost. The fact that he is an author and does literary work does not prevent his hiring out to another to produce an article in which his name shall not appear.

The plaintiff agreed to do any writing or compiling of entire or parts of articles which the defendant might direct. If he had written a portion of an article on any given subject, he would not have been entitled to have his name appear as author of that portion, or as a co-laborer with the principal author. The right to mutilate and change through editing of any article which the plaintiff might prepare negatives the idea that the plaintiff's name was to appear as author of each article which he wrote; for it might have been so changed that he would not desire his name to appear as author, or the changes might have been of such a character that it would have been unfair for the defendant to so publish it. Whatever the plaintiff may have produced, we think belonged to the defendant, and that it was under no obligation to publish the article under the plaintiff's name as author. That right was not reserved in the contract, and the character of the work and the manner in which plaintiff was to perform it was such that it is not to be presumed that the parties so contemplated when they entered into the contract.

The plaintiff insists that the contract had a practical interpretation as to what was meant, because the defendant published the article "Ambassadors and Consuls" under the plaintiff's name. The defendant had a right to do this, but it was not obliged to do so, and the evidence loses much of its force as a practical interpretation in view of the fact that the most of this article was written prior to the entering into of the contract now under consideration.

It is also urged that the plaintiff proved a custom among publishers of similar works of giving the name of the author of the article. It does not appear that the writers for such other publications were under a contract like that of plaintiff, nor was there such proof of a custom as would indicate that the parties contracted in relation to it. In the absence of such proof, it would be improper to read custom into the present contract.

Our conclusion is that the plaintiff had no right to demand that the defendant publish his name as author of the article "Army and Navy," and that the judgment restraining the defendant from publishing the article without his name appearing was erroneous, and must be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.