## HARRIS v. TWENTIETH CENTURY FOX FILM CORPORATION.

District Court, S. D. New York.

Jan. 2, 1942.

O'Brien, Driscoll & Raftery, of New York City (Arthur F. Driscoll and Milton M. Rosenbloom, both of New York City, of counsel), for plaintiff.

Dwight, Harris, Koegel & Caskey, of New York City (F. W. R. Pride and Harry J. McIntyre, both of New York City, of counsel), for defendant.

GODDARD, District Judge.

Defendant moves under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, for an order granting summary judgment in its behalf and dismissing the complaint herein.

The complaint alleges that prior to February 27, 1939, plaintiff conceived the idea of a motion picture based upon the story of the Mormons and submitted a synopsis of such story to the defendant, a producer of motion pictures. On or about February 27, 1939, plaintiff gave an option to defendant to purchase that story for the sum of $1,000, exercisable within one year; that at or about the same time defendant hired the plaintiff as a writer under the terms of a contract hereinafter set forth and subsequently

plaintiff entered upon such services and was employed "in creating and writing material based upon the said original story" of the plaintiff; on or about May 17, 1939, defendant hired Louis Bromfield "to collaborate with plaintiff in the adapting of the said story for use in the making of a motion picture and in the writing of said motion picture"; thereafter Louis Bromfield and the plaintiff collaborated in such work. Defendant exercised its option agreement to purchase plaintiff's rights in said story; thereafter defendant made a motion picture entitled "Brigham Young—Frontiersman" based upon the result of the joint work of plaintiff and Bromfield as well as upon the original story of the plaintiff. Upon the completion of the picture, which was given a nation-wide release, exclusive screen credit for said story was given to Bromfield.

Plaintiff complains that defendant did not state that the aforesaid story upon which the story was based was either written by her or that she collaborated with Bromfield in composing said story.

Paragraph Twenty-Second of the complaint alleges: "Twenty-Second: Plaintiff has heretofore stated to her friends, professional and business acquaintances and others that she was the author of the original story of the said picture; that she did creative writing for the motion picture, and that she collaborated with Louis Bromfield in the writing of the adaptation thereof."

Plaintiff then alleges that by virtue of the credits given to Bromfield "defendant makes it appear that the plaintiff is a prevaricator and liar, and that she is endeavoring to obtain credits that do rightfully and properly belong to her, and that she is falsely claiming as hers, literary property and material done solely and entirely by the said Bromfield". Plaintiff asserts that such action is a fraud upon the public and a fraud upon the plaintiff "in that it gives to the said Louis Bromfield credit for the original and creative literary work done by this plaintiff".

In a second cause of action plaintiff alleges that in the motion picture she was given credit by the defendant for "Story Research". This is alleged to be false, misleading and a libel upon the plaintiff. In paragraphs Thirty-Second and Thirty-Third it is alleged:

"Thirty-Second: That the term 'Story Research' as used by the defendant and credited to the plaintiff signifies searching in prior art or in prior literary works for material or stories, and does not carry the significance of creative or original work as a writer of literary material."

"Thirty-Third: Plaintiff has never been employed nor rendered services in the capacity of a story researcher, and her position in the motion picture business, and her position in her profession as an author or writer is that of a creative writer or a writer of original and new material. The aforesaid classification of the plaintiff as a story researcher has greatly damaged the plaintiff's reputation in the motion picture business and elsewhere".

Defendant asserts that plaintiff has no rights of any nature in the material referred to in the first cause of action because of certain contracts entered into by the plaintiff and defendant.

On February 27, 1939, the plaintiff agreed to render her services as a scenario writer to the defendant for the sum of $75 per week. [1]

---

[1] That agreement states: "(5) We shall be entitled to and shall solely and exclusively own, in addition to your services, all of the results and proceeds thereof (including, but not limited to, all rights throughout the world of production, manufacture, recordation and reproduction by any art or method, including television and radio broadcasting and of copyright, trademark and patent) whether such results and proceeds consist of literary, dramatic, musical, motion picture, mechanical or any other form of works, themes, ideas, compositions, creations or products, together with the rights generally known in the field of literary and musical endeavor as the moral rights of authors in and/or to any musical and/or literary proceeds of your services, including but not limited to, the rights to add to, subtract from, arrange, revise, adapt, rearrange, make variations of said property, and to translate the same into any and all languages, change the sequence, change the characters and the descriptions thereof contained in said property, change the title of the same, use said title or any of its components in connection with works or motion pictures wholly or partially independent of said property, and to use all or any part of said property in new versions, adaptations, and sequels in any and all languages, and to obtain copyright therein throughout the world; and you do hereby assign and transfer to us all of the foregoing without reservation, condition or limitation, and no right of any kind, nature or description is reserved by you * * * ".

Plaintiff and defendant entered into an agreement on February 22, 1940, whereby the defendant purchased from the plaintiff all her right, title and interest in her original literary composition entitled "Prophets of Empire" (alternate title "Brigham Young") for the sum of $1,000.[2]

■ From the above it appears that plaintiff retained no rights of property in her original literary composition. It is true that the law recognizes certain property rights of an author in his finished creation. But, as in other property rights, the law gives effect to a clear unequivocal transfer of such rights pursuant to a contract and for valuable consideration. Jones v. American Law Book Co., 125 App.Div. 519, 109 N.Y.S. 706; Hackett v. Walter, 80 Misc. 340, 142 N.Y.S. 209.

■ It should be noted that the plaintiff admitted in her deposition that her agent who represented her in connection with the execution of the aforesaid contracts had informed her that the defendant would not agree to give her any screen credit.

It seems to me that the plaintiff transferred all rights in her work to the defendant by express contract and she cannot complain at this time that the defendant did not mention her as Bromfield's collaborator in the screen credits, and that the first cause of action must fall. See American Law Book Company v. Chamberlayne, 2 Cir., 165 F. 313.

Plaintiff's second cause of action is predicated upon the action of the defendant in giving her screen credit for "Story Research". Plaintiff alleges that such characterization is libelous and damaged plaintiff's reputation by attributing to her an unfair type of work inferior to that of creative writing.

■ I am of the opinion that this description of the plaintiff's efforts is not libelous per se. In Kimmerle v. New York Evening Journal, Inc., 262 N.Y. 99, 186 N.E. 217, 218, it is stated that the publication of "words which tend to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or to induce an

[2] The pertinent part of this agreement reads:

"First: The Owner does hereby grant, convey and assign unto the Purchaser, its successors and assigns forever, all the right, title and/or interest of the Owner in and/or to said property, including, but not limited to the following rights:

"(a) The sole and exclusive dramatic and/or state presentation rights and dramatic copyright throughout the world in and to said property, and each and every part thereof.

"(b) The sole and exclusive right, throughout the world, to publish, advertise and sell said property in any style and/or manner the Purchaser may desire.

"(c) The sole and exclusive motion picture rights and motion picture copyright throughout the world in and to said property.

"(d) The sole and exclusive right, throughout the world, to mechanically produce, reproduce and license the reproduction of spoken words taken from and/or based upon the text or theme of said property, on records, films, or other devices designed and/or used for the purpose of producing and reproducing sound in synchronism with, accompaniment of or supplementary to motion pictures and/or television productions, using for that purpose all or a part of the text, theme and/or dialogue contained in said property.

"(e) The sole and exclusive right to make, produce, adapt, sell, lease, rent, exhibit, perform and generally deal in and with and to copyright literary, dramatic, motion picture, television, radio and/or other adaptations or versions of said property, and of the characters and characterizations contained therein, of every kind and character, with or without sound accompaniment, and with or without the interpolation of musical numbers therein, and for such purposes to adapt one or more versions of said property, to add to and subtract from the property, change the sequence thereof, use a portion or portions of said property, change the titles of said property, use said titles, or any of their components in connection with works or motion pictures wholly or partially independent of said property, change the characters in said property, change the descriptions of the said characters, and use all thereof in new versions, adaptations and sequels in any and all languages, and to register and obtain copyright therein, throughout the world.

"Third: It is the purpose of this agreement and the intention of the Owner to transfer to the Purchaser all of the rights of the Owner throughout the world in and to said property, including the moral rights of authors; it being understood and agreed, however, that the Purchaser shall be under no obligation to exercise or to put to use any of the rights acquired hereunder."

evil opinion of one in the minds of right-thinking persons, and to deprive one of their confidence and friendly intercourse in society" is libelous per se. See also Sydney v. MacFadden Newspaper Pub. Corp., 242 N.Y. 208, 210, 151 N.E. 209, 44 A.L.R. 1419.

Plaintiff in her brief states that the term "Story Research" is a new phrase coined by the defendant and she then asserts that it connotes non-creative writing. In the light of authorities referred to above, I cannot say that the term "Story Research" applied by the defendant to this plaintiff is libelous per se.

Moreover, the second cause of action should be dismissed as plaintiff has not pleaded special damages. Sydney v. MacFadden Newspaper Pub. Co., supra; Tower v. Crosby, 214 App.Div. 392, 212 N.Y.S. 219.

The defendant's motion for summary judgment dismissing the complaint is granted. Settle order on notice.