Joseph R. Clevenger, Respondent, v. Baker Voorhis & Co.,
Appellant, et al., Defendant. Joseph R. Clevenger, Respond-
ent, v. Baker Voorhis & Co., Defendant, and Matthew Bender
& Co., Appellant.

First Department, April 26, 1960.

*Joseph Rasch* for Baker Voorhis & Co., appellant.

*Denis R. Sheil* of counsel (*John L. McCormick* with him on
the brief; *Schmidt & McCormick,* attorneys), for Matthew
Bender & Co., appellant.

*Joseph R. Clevenger,* respondent in person.

M. M. Frank, J. The defendants separately appeal from Special Term orders denying their motions to dismiss the amended complaint for failure to allege a cause of action. The suit is to recover damages, not for violation of the Civil Rights Law (§ 51), but rather, as stated by the plaintiff, as a common-law action "for misrepresentation of editorship."

The complaint does not allege a libel, a breach of contract, unfair competition, or a trespass upon the plaintiff's literary property by the unwarranted and unauthorized publication of a manuscript without his consent (see *American Law Book Co.* v. *Chamberlayne,* 165 F. 313).

According to the pleading, the plaintiff wrote "Clevenger's Annual Practice of New York" in 1922. In 1923 he sold his product and its copyright to the defendants, and consented that his name as editor be printed on the title page. Thereafter, by agreement, the plaintiff edited each annual issue through 1956. In 1956 he terminated his editorship of the annuals and revoked his consent to the use of his name as editor. There was a dispute between the parties involving the 1957 edition, and litigation predicated upon a violation of the Civil Rights Law ensued. The parties adjusted their differences, the action was terminated, and we have no concern with it. The pleading under attack concedes that the plaintiff sold the book and its copyright to the defendants, and that under the contract they had the right to use his name in the title. Thus there is no question that the defendants' use of "Clevenger's Annual Practice of New York," as it appears on the title page, and "Clevenger's Practice Manual," as stamped on the spine of the book is lawful and proper, and does not impinge upon the plaintiff's rights. The quarrel arises from the use of the words "Annually Revised" on the title page of the 1959 edition. From 1922 to 1956 each annual edition of the book under consideration contained the statement on the title page, "Revisions by Joseph R. Clevenger, A.B., L.L.B. of the New York City Bar". The 1957 issue bore the legend, "1957 Revision by Publisher's Editorial Staff". The 1959 edition merely states, "Annually Revised." It should be noted, therefore, that the edition with which we are concerned neither expressly attributes the revisions to the plaintiff nor does it indicate by whom they were made. Moreover, the only place where the plaintiff's name appears on the title page is in the title itself. We must therefore separate the permissible use of the plaintiff's name in the title of the work from the claimed improper or impermissible use of the term

"Annually Revised" in the 1959 edition. Concededly, if the defendants specifically named someone other than the plaintiff as the reviser, no action would lie.

In his brief, the plaintiff suggests that two issues are posed. He states that, "first and primarily, defendants printed misleading title page of 1959 Edition in order to conceal their editorship and to misrepresent his editorship; and second, defendants failed to print any truthful Title Page Notice of 1959 Edition for information and protection of the public."

The complaint alleges that in the 1959 edition there are "over 200 misleading Errors of omission and commission in Texts of Practice Acts and Court Rules," and that such errors are harmful and injurious to the plaintiff's reputation. The gist of the complaint is that by failing to name either specific persons or the publisher's editorial staff as authors of the annual revision, the defendants "intentionally created false impression on Lawyers and purposely deceived and misled them to believe erroneously that plaintiff, not defendants, edited 1959 Edition". In effect, the plaintiff contends that by the omission of the names of the revisers the inference necessarily, inescapably, and exclusively follows that the plaintiff was the author. We cannot so hold. In *Jones* v. *American Law Book Co.* (125 App. Div. 519, 521) this court decided that one who hires out to another to write an article without reserving any rights therein, and also conveys the ownership of the copyright, cannot compel the publisher to print his name as the author and delete the name of another, who revised it, as the editor of the article. By analogy, the plaintiff has no right to demand that the defendants must print the names of the revisers or specifically state that the plaintiff is not the reviser. It is enough if they do not represent that he is the reviser if, in fact, he is not.

We cannot accept the premise, adopted in the dissenting opinion, that a casual reading of the title page would lead one to believe that the 1959 annual revision was done by the plaintiff. To find actionable misrepresentation in the pleading before us, we would be required to read into or add inferentially to the term "Annually Revised" words such as "by Clevenger." That would, indeed, be grafting onto a truthful phrase and the permissible use of a title, an inference without warrant in fact or in law.

We need not venture into a detailed analysis of the contents of the book under discussion, as most members of the profession are familiar with it. It differs in at least one respect from similar compendia in that a revised edition is issued annually instead of a "pocket" revision, thus, as stated on the title page,

"Necessitating Only One Place to Look For Complete Text of Section or For Controlling Annotation Without Reference to Any Supplement".

Members of the Bar are familar with the custom or long-standing practice in the publication of lawbooks of retaining the name of the original author in the title for decades, and it does not follow that such usage denotes authorship of revisions by the named individual. We think that the title of the book here is merely descriptive, and serves to differentiate it from others dealing with the same material. Thus Clevenger's is distinguished by that name from Carmody-Wait, Bender's Gilbert-Bliss, Nichols-Cahill, or Cahill-Parsons'. All of these have been revised from time to time by persons other than those whose names appear in the titles. For example, Carmody's 1955 pocket supplements do not disclose the names of the revisers. It is a fair conclusion that most lawyers select a particular book containing the practice acts for its format, convenience, or cost, rather than because of the editor's or reviser's name.

In this State there is no common-law right of privacy under the circumstances of this case. (*Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538.) That right, if any, is available under the Civil Rights Law (§§ 50, 51) and the pleading herein is not based on the statute.

The plaintiff places reliance upon *Archbold* v. *Sweet* (5 Car. & P. 219). That case, decided in England in 1832, is inapplicable here, for it turned upon an express statement attributing the authorship to the plaintiff. Nor can we apply *Harte* v. *De Witt* (1 Cent. L. J. 360 [N. Y. Supreme Ct., 1874]), as we are urged to do by Mr. Clevenger. In that case, which was for a temporary injunction, the plaintiff had written four chapters of a story which was completed 10 years later by an unknown person. Upon publication, the book was attributed to the plaintiff and his name as author was printed along with the titles of other books he had written.

Here the title page does not designate the plaintiff as the author, but merely states that the edition is revised annually. In the absence of an express misrepresentation, we find no authority for the proposition that there is a duty upon the publishers to mention by whom revisions are made. At best, the complaint charges that the omission of the names of the revisers "intentionally created false impression on Lawyers and purposely deceived and misled them to believe erroneously that plaintiff, not defendants, edited 1959 Edition". Even if we were to assume that an intentional misrepresentation was per-

petrated on lawyers, it would not give rise to a right in the plaintiff to recover at common law. By the tests applied to prima facie tort or any other form of intentional harm, this pleading is insufficient. (See *Penn-Ohio Steel Corp.* v. *Allis-Chalmers Mfg. Co.,* 9 A D 2d 620; *Rager* v. *McCloskey,* 305 N. Y. 75; *Knapp Engraving Co.* v. *Keystone Photo Engraving Corp.,* 1 A D 2d 170, 172; *Ruza* v. *Ruza,* 286 App. Div. 767.)

This is not a case in which it is charged that the defendants inflicted intentional harm upon the plaintiff, resulting in damage, without excuse or justification, by an act which is otherwise lawful. (*Ruza* v. *Ruza, supra,* p. 769.) There is nothing to indicate that there was a tortious interference with any right or property in the plaintiff, and we are unaware of any form of action on the case upon which this claim can be predicated, especially in the absence of any averments of temporal or special damage.

Under the circumstances, we must conclude that the complaint does not allege a cause of action. The orders at Special Term should be reversed on the law, and the motions to dismiss the complaint granted, with costs to the appellants.

BASTOW, J. (dissenting). In my opinion the complaint is legally sufficient and should not be dismissed. The plaintiff, according to the pleading, has been a member of the Bar for 47 years, is the author of 86 lawbooks and has edited 500 practice annuals. In 1922 he wrote and published "Clevenger's Annual Practice of New York" and in 1923 sold the work with copyright to defendants. Thereafter he edited for defendants the annual editions from 1923 through 1956. In the latter year he terminated this editorship and revoked his consent to the use of his name as editor.

Despite this fact the defendants produced the 1957 edition with the title page reading in part as follows:

"CLEVENGER'S
ANNUAL PRACTICE
OF NEW YORK

\* \* \*

1957
ANNUALLY REVISED

\* \* \*

Edited and Annotated by
Jos. R. Clevenger, A.B., L.L.B.
of the New York City Bar ".

Following plaintiff's protest of this misrepresentation the defendants sent to each of their subscribers a gummed sheet to place over the words "Edited and Annotated by Jos. R. Clevenger, A.B., LL.B. of the New York City Bar." Printed on the new insertion was the following:

"1922–1956 Revisions by
JOS. R. CLEVENGER, A.B., LL.B.
1957 Revision by

PUBLISHER'S EDITORIAL STAFF."

When the 1959 edition was published this factually correct statement was discontinued and in place thereof the following was substituted:

"CLEVENGER'S
ANNUAL PRACTICE
OF NEW YORK

\* \* \*

1959

ANNUALLY REVISED

\* \* \*,"

The pleading goes on to allege in substance that this was an act of deception and misrepresentation for the purpose of leading lawyers, who use the work, to believe that plaintiff continued to edit the annual editions. It is alleged that in the 1959 edition there appear more than 200 misleading errors of omission and commission in the texts of the Practice Acts and court rules. It is alleged that these errors, among other things, consist of omitting parts of amended sections and rules, omitting names of counties authorized to collect fees, omitting or misstating effective dates of sections added or amended and misstating, misclassifying and misapplying annotations. All of this it is stated was harmful and injurious to plaintiff's reputation; that many lawyers and law librarians have been led to believe that these errors were made by plaintiff and thereby his reputation as a lawyer and editor, built up over a period of 50 years, has been irreparably damaged and impaired. A monetary recovery is sought.

Defamation is "that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him."

(Prosser, Torts [2d ed.], p. 574.) The rule seems to be well established that "To publish in the name of a well-known author any literary work, the authorship of which would tend to injure an author holding his position in the world of letters, has been held to be a libel." (*Ben-Oliel* v. *Press Pub. Co.,* 251 N. Y. 250, 256; *D'Altomonte* v. *New York Herald Co.,* 154 App. Div. 453, mod. 208 N. Y. 596; *Carroll* v. *Paramount Pictures,* 3 F. R. D. 47.) In the *D'Altomonte* case the court said (p. 455): "I think the publication ascribing the authorship of such an article to a man of the standing and reputation which plaintiff claims for himself, admitted by the demurrer, if false and a forgery, is calculated to hold him up to ridicule and contempt and to destroy his influence as a writer and lecturer, and is susceptible of the construction and consequences placed upon it by the complaint."

If a reasonable basis exists for an interpretation that the publication as a whole is capable of a defamatory meaning then it becomes the function of a jury to decide whether that was the sense in which the defamatory material would likely be understood. (Cf. *Vocational Guidance Manuals* v. *United Newspaper Mag. Corp.,* 280 App. Div. 593, affd. 305 N. Y. 780.)

Judged by these rules the complaint is legally sufficient. There can be no question that defendants had acquired the legal right to use plaintiff's name in connection with the annual practice manual. For more than 30 years plaintiff edited and annotated the annual revisions. When this employment terminated defendants continued to state in the 1957 edition that the annotations and editorial work were done by plaintiff. They conceded the error by sending out sheets to paste over the incorrect statement. This material stated the correct facts but two years later defendants adopted the practice of stating the book was Clevenger's Annual Practice and was annually revised but omitted the information that the revision was by its staff or some other third party.

Upon this motion we must assume the truth of the allegations of the pleading that the manual contains more than 200 errors of a kind that would not be considered unimportant when discovered by members of the Bench and Bar. A casual reading of the title page would lead one to believe that the editorial work was done by the plaintiff, who has been a prolific legal writer for years enjoying a high reputation as an author and editor.

It should not be said as a matter of law that the acts of defendants did not defame plaintiff. It is for a jury to decide

whether the revisions may be attributed to the authorship of the plaintiff and, if so, whether such fact would tend to injure plaintiff as a lawyer and legal author.

The orders appealed from should be affirmed.

McNally, and Stevens, JJ., concur with M. M. Frank, J.; Bastow, J., dissents and votes to affirm in opinion in which Rabin, J. P. concurs.

Order reversed on the law, with $20 costs and disbursements to the appellants, the motion to dismiss the complaint granted, with $10 costs, and the Clerk is directed to enter judgment in favor of defendant-appellant Baker Voorhis & Co. dismissing the complaint, with costs.

Order reversed on the law, with $20 costs and disbursements to the appellants, the motion to dismiss the complaint granted, with $10 costs, and the Clerk is directed to enter judgment in favor of defendant-appellant Matthew Bender & Co. dismissing the complaint, with costs.