THE RECTOR, CHURCHWARDENS AND VESTRYMEN OF CHRIST'S CHURCH AT PELHAM, Respondent, v. THOMAS A. F. COLLETT, Appellant.

Second Department, April 3, 1924.

Corporations — religious corporation — Protestant Episcopal church — action for injunction restraining defendant from performing ministerial functions in church — property and control of church had been duly conveyed to plaintiff — defendant thereafter elected assistant minister of church for one year by vestry of plaintiff — engagement not renewed — under evidence defendant subject to rector and vestry of plaintiff and relation to church not pastoral — year having expired defendant could no longer possess church property or officiate therein — injunction granted — judicial notice not taken of status of ecclesiastic.

A permanent injunction will be granted in an action brought by the rector, churchwardens and vestrymen of a Protestant Episcopal church to restrain the defendant from performing ministerial functions in a church alleged to have been united with and absorbed by the plaintiff, where the evidence shows that the property and control of such church had been duly conveyed to the plaintiff; that, thereafter, the defendant was elected assistant minister of such church for a period of one year by the vestry of the plaintiff; that plaintiff's vestry refused to re-engage the defendant and so notified him; that after the expiration of his term the defendant conducted services contrary to the direction of the rector and against his protest; and that, under the canons for the government of the Protestant Episcopal church in the United States of America, an assistant minister is under the control of the rector and vestry of the church which he serves.

Under the circumstances, the defendant did not sustain a pastoral relation to the church and the case does not involve questions of discipline, faith or ecclesiastical rule and, hence, warrants the interposition of a court of equity.

The court will not take judicial notice of the status of an ecclesiastic.

APPEAL by the defendant, Thomas A. F. Collett, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 26th day of December, 1923, upon the decision of the court rendered after a trial at the Westchester Special Term.

*George Gordon Battle* [*Lanman Crosby* with him on the brief], for the appellant.

*Albert Ritchie,* for the respondent.

KAPPER, J.:

This controversy involves the right of the defendant, as a minister of the Protestant Episcopal church, to enter upon and hold church property and officiate therein as such minister after the expiration of the term for which it is claimed by the plaintiff the defendant was employed. The Special Term rendered a judgment in favor of the plaintiff upon the merits, after trial, enjoining and restraining the defendant from performing ministerial functions in said church, from entering upon the property of said church for the purpose of officiating at said church as minister, and from interfering with the plaintiff and its rector in conducting divine worship and other religious work in said church. The plaintiff is a religious corporation, in union with the Protestant Episcopal church in the United States within the diocese of New York. Grace Church at City Island, of which the defendant claims to be a permanent and irremovable minister (in so far as concerns the plaintiff's right to exclude him from said Grace Church), is also a religious corporation affiliated or in union with said Protestant Episcopal church and diocese.

Grace Church was not self supporting. On November 19, 1920, the Supreme Court authorized the conveyance by the Rector, Wardens and Vestrymen of Grace Church at City Island of all its real property to the plaintiff church. The order was made on petition of the Rector, Wardens and Vestrymen of Grace Church at City Island and obtained the approval of the bishop of the diocese as well as the standing committee of the diocese. No question is raised as to the regularity of this transaction, nor is there any dispute that since the conveyance of the property the temporal affairs of said Grace Church have been managed and controlled by the vestry of the plaintiff church, and that since such conveyance both congregations have been united and have acted as one religious society or parish in the name of the plaintiff church.

On October 3, 1922, at a meeting of the vestry of the plaintiff church, the defendant was elected vicar, or assistant minister, to officiate in the City Island church for one year from October 15, 1922. The defendant was present at such meeting and accepted such engagement and the terms thereof. On June 5, 1923, a meeting of the vestry of the plaintiff church was held, at which the rector of the parish reported that the work of the defendant at City Island was unsatisfactory, and a resolution was thereupon adopted

by the vestry not to renew the defendant's engagement when it expired on October 15, 1923, and the defendant was duly notified of that action.   Subsequently, and at about the expiration of the year, defendant was notified to surrender possession of the vicarage and to cease the exercise of ministerial functions in the parish.   The defendant asserted that he was in charge of the City Island church, intended to hold possession of the property, conduct services in the church and Sunday school, and retain the records of the church, despite the action of the rector and vestry of the plaintiff forbidding him so to do.   On October 21, 1923, the rector of the plaintiff attended at Grace Church, City Island, for the purpose of holding services therein, and, outside of the church, met the defendant, who demanded as assistant minister of the parish, the right to hold services or participate therein, which said rector forbade him to do.   The rector told the defendant that he was no longer assistant minister of the parish and could have no part in the service, notwithstanding which the defendant entered the church while the rector was in the vesting room preparing himself for the service, and proceeding to the altar began, himself, the essential and appropriate service.   Whereupon the rector left the church in protest, and, as he says, " to avoid an unnecessary scene."   The rector communicated with the members of the vestry and also with the suffragan bishop of the diocese, who informed him that the bishop of the diocese, Bishop Manning, had advised that the church be closed for at least one Sunday until the matter could be settled, and that the vestry advised the same thing, whereupon notice was sent to the congregation of the City Island church of such advice and that the church would, therefore, be closed on the following Sunday, and a notice to the same effect was posted on the door of the City Island church. The defendant nevertheless entered the church on that Sunday and held services and asserted and still asserts that he is the minister in charge, with all the rights pertaining to such office.   He has been charged with having acted " in an unlawful manner and contrary to the canons of the church," and this, the Special Term has decided, has resulted in " an injury to the plaintiff and its work," and that to permit the defendant to continue " the acts and things " complained of " would work irreparable injury to the plaintiff " for which " the plaintiff has no adequate remedy at law; " and an injunction, accordingly, has been granted.

It is the contention of the appellant that the controversy is an ecclesiastical one, outside of the jurisdiction of a civil court; and this contention is based upon the argument that the relation of the appellant to Grace Church at City Island " is a pastoral

one " which may only be dissolved in the manner defined in the canons of the church. The church canons are in evidence. If the relation between the defendant and the church to which his contract of employment assigned him, namely, Grace Church at City Island, was a " pastoral " one, the contention that such relation could only be terminated in the manner provided by the canonical law of the church would be correct. Canon XXVI (promulgated by the diocese of New York) points out the procedure for the dissolution of the pastoral relation existing between a clergyman and his parish in the event of a disagreement between such clergyman and the vestry of his parish, by written notice of hearing, trial if demanded, and a judgment by the bishop. But the respondent asserts that the " pastoral " relation never existed; that the defendant's employment was as an " assistant minister; " that he was subject to the authority and control of the rector of the parish, and that, his term of employment having ended, he could no longer possess the church property or officiate therein.

Canon XX (for the government of the Protestant Episcopal church in the United States of America) distinguishes between a " minister " and an " assistant minister." As used in this canon the word " minister " is synonymous with the word " rector." The method of election of the latter is definitely pointed out. It provides for the submission of his name to the bishop thirty days before election; a subsequent written notice to the ecclesiastical authority of the diocese of his election, signed by the church wardens; which authority, if satisfied that the person so chosen is a duly qualified minister and that he has accepted the office, shall notify the " secretary of the convention," who shall record it. " And such record shall be sufficient evidence of the relation between the minister and the parish." It then declares that " a minister is settled " who, " according to the rules of said diocese," has been engaged permanently by any parish or for any term not less than one year.

But, in the case " of the election of an assistant minister," no other step is required either before or after election except that *upon* election " a certificate from the rector and wardens shall be sent to the bishop."

Then by canon XXI it is provided:

" § I. [i.] The control of the worship and the spiritual jurisdiction of the Parish, are vested in the Rector, subject to the Rubrics of the Book of Common Prayer, the Canons of the Church, and the godly counsel of the Bishop. All other Ministers of the Parish, by whatever name they may be designated, are to be regarded as under the authority of the Rector.

" [ii.] For the purposes of his office and for the full and free discharge of all functions and duties pertaining thereto, the Rector shall, at all times, be entitled to the use and control of the Church and Parish buildings with the appurtenances and furniture thereof."

If there are other provisions of the canonical law beyond those referred to, which dignify and augment the standing and authority of an " assistant minister," they have not been pointed out to us. " We know nothing of them judicially," and before our courts can declare the status of an ecclesiastic, it must be proved as a matter of fact. (*Youngs* v. *Ransom*, 31 Barb. 49, 60.) As already indicated, there was sufficient competent evidence to establish that the precise relation of the defendant to the plaintiff was that of an " assistant minister," assigned to officiate in Grace Church at City Island, the temporal proprietorship of which was and is in the plaintiff church, Christ's Church at Pelham; and that as such " assistant minister " the defendant's employment was for the definite period of one year, which had expired, but to which termination the defendant declined to yield assent. We have defendant's status pointed out in this record by eminent authority, that of Bishop Manning of the diocese of New York, who, in an affidavit to which both litigants refer on this appeal by way of interpretation, says: " That Grace Church, City Island, is at present a part of the parish of Christ Church at Pelham Manor, under the agreement existing between them. That the rector and vestry of Christ Church is in control of Grace Church, City Island. That Thomas A. F. Collett was never called as rector of Grace Church, City Island, and never had any approval from the deponent as such. That the said Collett was engaged as vicar or assistant minister by the rector and vestry of Christ Church. That under the canonical or ecclesiastical law of the church a vicar or assistant minister is under the control and direction of the rector and vestry of the parish, and that the said Collett is bound, under the canonical law, to obey the direction of the rector and vestry of Christ Church, and has no right, contrary to such direction, to officiate or to enter into or upon church property, for the purpose of officiating or exercising any priestly or ministerial functions or purporting to exercise any pastoral or other rights as rector of Grace Church, City Island, or as vicar thereof, without the consent of the rector and vestry at Christ Church, Pelham."

In the light of what has been said, the conclusion is reached that the defendant did not occupy a " pastoral relation " under the protection accorded by canon XXVI (*supra*) to a clergyman or minister of a parish. Such being the case, we think the facts

and circumstances warranted the interposition of a court of equity. The case does not involve questions of discipline, or of faith, or ecclesiastical rule. If it did, we would and should renounce jurisdiction and leave the matter for determination to the church judicatory, whose decision, in such matters, would be accepted by any court in the land as final. (See *Connitt* v. *Reformed Protestant Dutch Church of New Prospect*, 54 N. Y. 562, and cases there cited.) But where there is a misuse of the temporalities, estate and property of a religious corporation, equity will interfere and by injunction restrain such misuse. (*First Reformed Presbyterian Church* v. *Bowden*, 14 Abb. N. C. 356; *Isham* v. *Fullager*, Id. 363.) Like relief will follow where there is a likelihood of a breach of the peace or a conflict between two clergymen or their adherents, in conducting the worship of the congregation. (*Youngs* v. *Ransom, supra.*) Injunction will issue to prevent a person not duly selected as minister from officiating in the church; likewise to enjoin a deposed minister from continuing to officiate in a particular church and to use the church property. (34 Cyc. 1149, citing cases.) So, also, in the recent case of *Fiske* v. *Beaty* (206 App. Div. 349) it was held that a court of equity will interfere to prevent one claiming to act as rector of a church but who has not been properly elected and instituted, from so acting and from possessing the rectory. The findings and conclusions made by the learned Special Term justice are amply supported by the record.

The judgment should, therefore, be affirmed, but without costs.

Present — Kelly, P. J., Rich, Jaycox, Manning and Kapper, JJ.

Judgment unanimously affirmed, without costs.