Salvatore Musso, Appellant, *v.* Cassius J. Miller, Respondent.

Third Department, November 11, 1942.

*Victor E. Musso* for appellant.

*James W. Smith* (*Wallace H. Sidney* of counsel), for respondent.

Hill, P. J.   The appeal is from a judgment dismissing the complaint on the merits with costs following a verdict of no cause of action.   The court submitted the case to the jury as one for slander, saying in his charge, "This case, therefore, sifts down to one matter which you are to decide and that is the statement the plaintiff alleges the defendant made with respect to him, namely, that ' he was unfit to be a minister.' "

The appellant, a Methodist minister, had been appointed Pastor of the St. Titus Bilingual Mission, Troy, N. Y. Respondent was District Superintendent, appointed by the

Methodist Church authorities, for the Troy District with certain powers in connection with the conduct and administration of the Mission. The complaint charges that respondent was opposed to the appointment of appellant as Pastor of the Mission, and thereafter sought his "downfall and removal" by wrongful, malicious and unlawful acts designed "to bring about the disgrace, contempt and ruin of the plaintiff." These acts enumerated and described in ten numbered paragraphs of the complaint included: the inciting of members of the Mission to join a " rebellious group in flouting the pastoral authority of the plaintiff;" the convening of the Quarterly Conference of the Mission for the "sole purpose of airing accusations against the plaintiff, and having him censured, although the defendant well knew * * * that * * * said Quarterly Conference had no authority to hear * * * charges against its Pastor;" summoning " the plaintiff to appear before the Triers of Appeal [over which respondent presided], well knowing * * * that the consequences thereof would be to cause a suspicion of immorality " against appellant and make it difficult or impossible for him " to earn a livelihood in the practice of his profession as a minister;" maliciously denying appellant rights and privileges guaranteed by the church discipline to an accused on such a hearing; presiding in an unlawful, arbitrary and malicious manner, stigmatizing appellant as one unfit to be a minister or pastor; the cutting off of funds to support the Mission and pay appellant's salary and finally maliciously accomplishing his retirement as a pastor by the annual conference. Evidence was received as to all or most of these items, but the court limited its consideration to the question whether the respondent was actuated by malice when he said that appellant was unfit to be a minister, saying in his charge, " Now, I have only stated a part of the evidence but in substance covered the conferences and so forth from which you are to judge whether there was any malice."

The alleged slander is but one of many damaging and malicious acts named in the complaint for which appellant asks redress. The forced retirement of appellant from the ministry is the culmination of the chain of events for which damage is sought.

An action will lie for malicious acts and words where they are calculated to produce and where they do produce damage. " Such an action is not one of libel or of slander, but an action on the case for damage willfully and intentionally done." (*Al Raschid* v. *News Syndicate Co.*, 265 N. Y. 1.) "A man has a right to give advice, but advice given for the sole purpose of

injuring another's business and effective on a large scale, might create a cause of action." (*American Bank & Trust Co.* v. *Federal Bank,* 256 U. S. 350, 358.) Words not slanderous, as well as lawful acts, if intended solely to injure a man in his business are actionable. (*Husted* v. *Husted Co.,* 193 App. Div. 493.) " The genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another." (*Beardsley* v. *Kilmer,* 236 N. Y. 80, 90.) *Williamson* v. *Columbia Gas & Elec. Corp.* (110 Fed. Rep. [2d] 15; writ denied, 310 U. S. 639), was brought to recover damages for the unlawful purchase of stock of a utility corporation by a competitor with the alleged purpose to lessen competition. It was decided that action on the case was a proper remedy, being founded on the common law and available to recover damages for torts not committed by force, actual or implied. The opinion quoting from 3 Blackstone Com., 122 says: "This action of trespass, or transgression on the case, is a universal remedy, given for all personal wrongs and injuries without force * * * ."

We have not considered the weight of evidence, and have only examined the facts to learn if upon a new trial there will be proof upon the theory above outlined and which is presented by the pleadings.

Respondent's request to charge was granted in connection with the following facts: it appeared that the District Attorney of the county had taught a class in the Mission but that he was not called as a witness by appellant. The court charged upon request that the failure by appellant to call him sustained the inference that his evidence, had he been called, would have been unfavorable to appellant. This was harmful error. (*Hayden* v. *N. Y. Railways Co.,* 233 N. Y. 34.)

The judgment and order should be reversed on the law with costs to abide the event and a new trial granted.

FOSTER, J. (dissenting). I find no evidence that respondent was originally opposed to the appointment of appellant. After the latter arrived at his parish in Troy he began to have trouble with his parishioners. There is no evidence whatever that respondent created this trouble, or had any hand in its origin. As evidence of this trouble mounted he was apparently somewhat at a loss to know what to do, and consulted the Bishop who had appointed appellant. The Bishop suggested a quarterly conference. Respondent called a meeting of those who would ordinarily compose such a conference in an attempt to adjust

the difficulties of the situation, and at this meeting the people who were present were permitted to express themselves freely, and so was the plaintiff. Two such conferences were held and both failed to re-establish harmony. Complaints were still made against appellant and he was charged with falsehoods, arbitrary and dictatorial conduct. The Triers of Appeals were finally summoned for the purpose of investigating these charges. Respondent presided as chairman but did not participate in their deliberations. No formal charges were formulated as a result of the hearing before this body but the individual members recommended that the Conference Relations Committee consider the retirement of appellant. Respondent took no part in this action, however. At the hearing appellant was represented by counsel of his own choosing but was not given the right to present witnesses, or to cross-examine those who made complaints, although he had the right and was permitted to make a statement himself. Subsequently respondent told at least some of the church members that appellant would be retired or that he would recommend his retirement. There were difficulties over the collection of funds for church purposes, and apparently respondent refused to engage actively in the collection of such funds himself.

Appellant was retired at the Troy Annual Conference in April, 1934. At the General Conference in 1936, the highest conference in the church, he appealed to the Judiciary Committee from the decision to retire him. The action of the Troy Conference was confirmed.

The trial court held that the proceedings thus taken were matters involving ecclesiastical law and custom, and that it was not within the province of the civil courts to interfere. I agree with him. The proof as to any alleged violations of church discipline was not of such a clear and convincing character as to justify interference. The greater weight of evidence, as I view it, is to the effect that whatever action respondent took was within his rights and duties as an administrative officer of the church and under the discipline, custom and usage of that church. But whatever questions there may have been concerning this should have been and presumably were adjudicated by the ecclesiastical courts. Appellant resorted to the highest judiciary body within the church and should be bound by its decision. (*Connitt* v. *Reformed Protestant Dutch Church of New Prospect*, 54 N. Y. 551; *Rector, etc., Christ's Church* v. *Collett*, 208 App. Div. 695.) He had the right to address the same arguments to such body that he has made to this court,

and presumably any conflict in the interpretation of church discipline, custom and usage was there resolved. The mere fact that on his own testimony alone he sought to create such a conflict on the trial of this case created no issue either for the trial court or this court. Under the circumstances I think we must presume that respondent was not guilty of any abuse of church process or discipline, or else the last court of ecclesiastical resort would have so found. If Miller acted within the laws and customs of the church he acted within his duties as a District Superintendent and the charge of malice becomes nebulous.

Consonant with these views the only thing left for the trial court to submit to the jury was the issue of slander. The error complained of in the charge, and upon which reversal is in part predicated, was harmless insofar as the submission of such issue was concerned.

I favor an affirmance of the judgment.

HEFFERNAN and SCHENCK, JJ., concur with HILL, P. J.; FOSTER, J., dissents, in opinion in which BLISS, J., concurs.

Judgment and order reversed on the law with costs to abide the event and a new trial granted.

The findings of fact below have not been considered. The order entered on this decision shall refer to the opinion as permitted by section 607 of the Civil Practice Act to the end that reference thereto may be made to supply any fact required by article 39 of the Civil Practice Act to be stated in the order.