OPINION OF THE COURT
Martin Evans, J.
This defendant’s motion seeks, inter alia, an order directing repleading of plaintiff’s third cause of action. It poses an unusual question: Does tort law provide a right of action *469 to an attorney for injury caused by a client’s allegedly perjurious testimony in a prior proceeding?
FACTS
The individual plaintiff is an attorney in practice in Manhattan. He brings this action on his own behalf and on behalf of his professional corporation. Defendant is a former client. Plaintiff represented defendant in a variety of matters for several years.[1] During the course of a proceeding arising from a matrimonial action, brought by defendant against her husband, defendant retained another attorney to replace plaintiff as counsel. During the course of plaintiff’s representation of defendant, plaintiff brought on a motion based on an affidavit signed by the defendant. After plaintiff’s replacement as counsel, defendant testified at a traverse hearing that plaintiff had created for her a false affidavit which was typed over her signature on a blank sheet of paper which, she claimed, plaintiff had previously requested her to sign. It is this testimony which plaintiff claims was false. As a result of such testimony, plaintiff was the subject of a complaint made to the Departmental Disciplinary Committee. The committee later determined that there was no basis on which to proceed against plaintiff.
In the third cause of action, here at issue, plaintiff claims that defendant “wilfully, intentionally and maliciously” gave false testimony about plaintiff thereby “wilfully” injuring him. He seeks damages for having been forced to defend himself against the complaint, for interference with his work, and for impeding his ability to obtain new work and clients.
I
The sort of injury claimed by plaintiff does not easily fall into any of the customarily accepted conceptual pigeonholes of tort law. Indeed, no effective, generally recognized civil remedy for perjury currently exists. (See Prosser, Torts [4th ed], § 114.) Difficulty in classifying a pleading is not an acceptable excuse for declining to adjudicate the issues it raises. Semantics alone should not determine *470 whether a wrong can be redressed. Moreover, under modern pleading practice, a complaint should be deemed sufficient if it sets forth an adequate factual basis for determining that some legal relief can be validly sought on one or more permissible theories. (Clevenger v Baker Voorhis & Co., 8 NY2d 187; see Dioguardi v Durning, 139 F2d 774.) Thus where, as here, the allegations might conceivably indicate the existence of multiple theories of recovery (e.g., defamation, injurious falsehood, prima facie tort), the pleading’s failure to satisfy the technical requirements for stating one theory (e.g., defamation; see CPLR 3016) is not necessarily fatal.
II
Although no single category of tort law directly covers the specific wrong committed, it is settled law in New York that harm intentionally done is actionable if the conduct is unjustified. More specifically, the theories of prima facie tort and injurious falsehood have in the past encompassed conduct similar to that alleged here.
The concept of prima facie tort essentially derives from an action on the case. It is intended to provide a remedy for tort injuries that do not conveniently fit into any other category. (See, generally, Ann., 16 ALR3d 1191.) Indeed, its simple translation from Latin and law French, a “wrong at first glance”, is probably its most practical definition. The law has long regarded malicious injury without excuse as an obvious societal wrong. (See Mogul S. S. Co. v McGregor, 23 QBD 598; 3 Blackstone’s Comm, ch 8.) Mr. Justice Holmes acknowledged, “It has been considered that, prima facie, the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law * * * requires a justification if the defendant is to escape.” (Aikens v Wisconsin, 195 US 194,204; see 52 Col L Rev 503; Ann., 16 ALR3d 1191.)
Prima facie tort has since become a more rigid, structured doctrine, necessitating the satisfaction of several elements before a cause of action can be proven. Currently, a cause of action in prima facie tort requires, in addition to malice and the pleading of special damages, an infliction of intentional harm, without excuse or justification, by an otherwise legal act. Although perjury by itself does not *471 constitute an “otherwise legal act” it is the malice, the intent to cause injury without excuse or justification, which turns otherwise legitimate conduct into a tortious act. (See Note, 32 St. John’s L Rev 282, 284.) Thus, even a lawful act, done with injurious or malicious intent, can be actionable. (Al Raschid v News Syndicate Co., 265 NY 1.) As the court pointed out in Beardsley v Kilmer (236 NY 80, 90), “the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another.”
For example, in Musso v Miller (265 App Div 57), where nonslanderous statements were maliciously made regarding plaintiff’s fitness to be a minister, the court held that an action on the case, as distinguished from one for slander, will lie for malicious acts or words designed to produce damage. (See, also, Sands v Weingrad, 99 Misc 2d 598 [malicious publication of personal income tax returns found actionable].)
Examining the types of conduct most relevant to the injury sustained here, those which have been found prima facie tortious include false words or actions intended to directly cause economic damage and those designed to cause injury to reputation. In fact, it had been a well-established common-law principle that an action on the case will lie for maliciously giving false information. As the 1892 English decision of Ratcliffe v Evans (2 QB 524, 527-528) states: “That an action will lie for written or oral falsehoods, not actionable per se nor even defamatory, where they are maliciously published, where they are calculated in the ordinary course of things to produce, and where they do produce, actual damage, is established law. Such an action is not one of libel or of slander, but an action on the case for damage wilfully and intentionally done without just occasion or excuse, analogous to an action for slander of title.” Furthermore, in Dubourcq v Brouwer (124 NYS2d 61, mod 282 App Div 861, affd 283 App Div 942), the court also recognized that an action will lie for statements maliciously circulated to harm plaintiff in his profession as long as the false statements were not actionable as libel or slander, either because they were not defamatory or for other reasons. (See Sands v Weingrad, 99 Misc *472 2d 598, supra [a complaint, which in broad conclusory terms alleges libel, slander, or false words causing special damages, when liberally construed may also encompass a case for prima facie tort].)
Consequently, the publication of false information has often been found actionable as prima facie tort rather than as defamation. For example, a plaintiff was able to seek damages, under prima facie tort doctrine, against his former employer for publishing to prospective employers false and malicious reports which harmed his reputation in his occupation. (Sheppard v Coopers’ Inc., 14 Misc 2d 180, app dsmd 7 AD2d 971; see, also, Ledwith v International Paper Co., 64 NYS2d 810, affd 271 App Div 864, mot for lv to app den 271 App Div 916.) Moreover, false statements circulated to customers disparaging plaintiff’s business are also actionable under prima facie tort. (Purofied Down Prods. Corp. v National Assoc. of Bedding Mfrs., 97 NYS2d 683 [misleading reports as to quality of product]; Advance Music Corp. v American Tobacco Co., 296 NY 79 [misrepresentation of popularity of songs]; Lo Bianco v Scott Pub., 82 NYS2d 248 [language accusing plaintiff of irregular business dealings]; see Rochester Brewing Co. v Certo Bottling Works, 192 Misc 629 [false statements as to business relationship between manufacturer and distributor leading to loss of sales]; see, also, Morrison v National Broadcasting Co., 24 AD2d 284, revd on other grounds 19 NY2d 453 [university professor held to have a valid cause of action when subjected to public scorn after having been induced to participate as a contestant on a quiz show with prearranged results].)
Moreover, plaintiffs have been found to have valid claims when they have been subjected to investigation as a result of false information maliciously given by the defendant. Thus, in Gale v Ryan (263 App Div 76), plaintiff was wrongfully subjected to an investigation for failure to file income tax returns because defendant employer made fraudulent statements concerning wages earned and received by plaintiff. In Brandt v Winchell (283 App Div 338, mot for lv to app den 283 App Div 794), defendant, a columnist, instigated investigations by law enforcement agencies and criminal proceedings against plaintiff, and *473 registered false complaints with governmental departments leading to the revocation of plaintiff’s pistol permit and license as a private detective. Defendant also had falsely accused plaintiff of fraud, embezzlement, and general dishonesty, thus destroying plaintiff’s ability to earn a living and ruining his reputation. Plaintiff also incurred litigation expenses at trial, was subjected to an injunction against engaging in legitimate business and was incarcerated. The court found that the complaint stated a cause of action in prima facie tort.[2] (See, also, Al Raschid v News Syndicate Co., 265 NY 1, supra [false statements made to immigration officials leading to deportation proceedings against plaintiff]; Schauder v Weiss, 88 NYS2d 317, affd 276 App Div 967, mot for lv to app den 276 App Div 1022 [institution of divorce on the basis of false report that plaintiff had committed adultery].)
In an action also involving perjured testimony, it was held that a defendant may be “legally responsible for malicious circulating or giving false information or testimony resulting in intentional injury to another.” (Gillis v Georgas, 225 NYS2d 164, 166.) Plaintiff’s complaint alleged that the defendant had falsely testified against him in the Grand Jury about a shooting, implicating plaintiff, a policeman. The circumstances of the underlying incident and the defendant’s motivation were not disclosed. Although the court found the complaint insufficient, it did find such conduct could be actionable under the prima facie tort doctrine. (But ef. Taker v Pollak, 44 NY2d 211,219-220 [dicta], and part IV, infra.)
Although prima facie tort should not become a catchall category making actionable everything not heretofore regarded as tortious, prima facie tort has developed as a broadly fashioned, adaptable instrument permitting the courts to afford a remedy for a wide range of injuries which society believes should be compensable. There is no reason in law or logic why it should not permit an action to be maintained against one who has injured both another person and the judicial system by knowingly committing *474 an illegal act. To hold otherwise would unjustly deny compensation to an injured party, reward the culpable party, and encourage others like him; it would ultimately undermine confidence in the legal process as an effective means of protecting the individual from acts which society regards as both harmful and immoral.
If unjustified intentional injury caused by an otherwise legal act can be actionable, then a fortiori, an unjustified, intentional injury caused by an illegal act should be actionable. Those cases assuming that the defendant’s act must be otherwise legal to be actionable are unduly restrictive and fundamentally inconsistent with the underlying purpose of the prima facie tort doctrine.
Ill
The tort of injurious falsehood is also an outgrowth of the action on the case; it is grounded in the same policy consideration as prima facie tort, that unjustified harm should be justly compensated. As codified by the Restatement, “One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.” (Restatement, Torts 2d, § 623A.) Intent to injure is thus equated with the scienter applicable to defamation actions brought by public officials, i.e., actual malice (see New York Times Co. v Sullivan, 376 US 254), based on the familiar concept of the foreseeability of harm. This principle was recognized in Penn-Ohio Steel Corp. v Allis-Chalmers Mfg. Co. (7 AD2d 441), an action having a strikingly similar fact pattern to that at bar. Defendant allegedly furnished the Internal Revenue Service with false and misleading information which suggested that the parties had conducted a fraudulent business transaction. A resulting indictment, charging plaintiff with tax evasion, was later dismissed. The court explained: “By its very nature a false statement intentionally made is wrongful. If it inflicts material harm upon another, which was or should have been in the contemplation of the actor, and it *475 results in actual damage to the plaintiff’s economic or legal relationships, an action may lie * * * It logically follows that to sustain a complaint, it is not necessary that the pleading must allege that the defendant was solely motivated to injure the plaintiff. It is enough if the falsehoods charged were intentionally uttered and did in fact cause the plaintiff to suffer actual damage in his economic or legal relationships.” (P 444.)
Consequently, even if defendant’s intention may have been to exculpate herself by disavowing an inconsistent statement, thereby aiding her claim in the case in which" the claimed perjury took place, one could conclude that it was, or should have been, foreseeable to defendant that her statement would be harmful to plaintiff. Indeed, under the circumstances alleged in the complaint, defendant’s act was so reckless as to appear equivalent to “actual malice”. The complaint thus apparently sets forth the requisite intent for an injurious falsehood claim.
IV
If not for its utterance as testimony during the course of a judicial proceeding, the accusation at issue here would be unquestionably actionable, either as prima facie tort or as injurious falsehood. However, the courts have traditionally held that an absolute privilege attaches to testimony in judicial proceedings so as to bar later defamation actions predicated on the content of the testimony. (See, generally, Prosser, Torts [4th ed], § 114; Youmans v Smith, 153 NY 214; Martirano v Frost, 25 NY2d 505; see, also, Toker v Pollak, 44 NY2d 211, 218-219, supra.) The privilege has been consistently justified as necessary to encourage witness co-operation. The risk of injury from defamatory or perjurious testimony has been consequently viewed as one which must be borne by the victim and the legal system. While the applicability of the testimonial privilege to prima facie tort cases has been questioned,[3] this court *476 recognizes that the policy considerations underpinning the testimonial privilege should logically apply in any subsequent litigation arising from the questioned testimony, whether based on defamation or on any other theory.
Yet even under the standards applicable to defamation and injurious falsehood actions, words spoken during the course of a judicial proceeding and thus ordinarily privileged can become actionable under certain limited circumstances. Thus, if the subject allegation is “so obviously impertinent as not to admit of discussion, and so needlessly defamatory as to warrant the inference of express malice”, the statement is actionable. (Youmans v Smith, 153 NY 214,220, supra’, see People ex rel. Bensky v Warden, 258 NY 55, 59; Martirano v Frost, 25 NY2d 505, supra.)
The privilege is intended to encourage witnesses to come forward and to testify fully, freely and honestly about the matters in issue, without fear of later legal harassment. No purpose is served by immunizing the speaker if the allegedly defamatory comment is not relevant to the matters in issue, but is gratuitously interjected out of malice, pique or whim.
Furthermore, if a party has manipulated the legal process, or initiated litigation, in order to defame or injure another under the protective cloak of privilege, the privilege should not be applied. (See The Savage is Loose Co. v United Artists Theatre Circuit, 413 F Supp 555, 561; Williams v Williams, 23 NY2d 592, 599.)
The important policy which the testimonial privilege seeks to advance would be subverted if the privilege were interpreted so as to shield perjurious testimony and deny its victim any opportunity to seek redress. It would seem both legally and logically inconsistent and, indeed morally repugnant, if the law were, however unwittingly, to encourage untruthful testimony. Witness availability and cooperation is. but one of the policy considerations which the law has recognized. The law has long recognized that an individual has a liberty interest in freedom from unjustified accusation and baseless litigation, and has consequently made its violation actionable. Although public policy encourages freedom to litigate, it has never permitted frivolous, malicious or otherwise wrongful litigation. *477 The torts of malicious prosecution and abuse of process, while having different origins and elements, are each intended to provide a remedy for malicious acts which wrongly subject an individual to legal action. (See 3 Blackstone’s Comm, ch 8.) The mere happenstance that the wrongful allegations may have been embodied in testimony or affidavit does not, and should not, automatically thereby serve to immunize the speaker. (See, generally, Prosser, Torts [4th ed], §§ 119-120; Bump v Betts, 19 Wend 421.) While the elements of those torts are not apparently present here, the policy considerations underpinning them are sufficiently analogous to indicate that a civil remedy should be available for the effects of perjurious testimony.
It cannot be said, under the circumstances, that “the defendant’s charge lacked any and all relevance to the proceeding * * * [and that it was] uttered for the sole purpose of maligning the plaintiff”. (Martirano v Frost, supra, p 508.) The accusation would thus appear to be privileged.[4] Rather than reflexively applying a mechanical rule, the better course is for the court to determine the scope and the application of the privilege within the context of the facts presented and the often conflicting public policy considerations. (See Sassower v Himwich, 236 NYS2d 491, 494, affd 19 AD2d 946 [client complaint to Bar Association Grievance Committee]; Toker v Pollak, 44 NY2d 211, supra [communication with judicial screening panel concerning past misconduct by judicial candidate].)
The court must strike a fair balance between several important competing interests: the rights of parties to litigate and of witnesses to testify without fear of intimidation or harassment, prospective or retrospective; the right of citizens, including attorneys, to defend their reputations; the right of all persons to speak freely; the right of all persons to be protected from malicious, unjustified injury to their good names, persons or property. Within the context of current law,[5] a fair balance can only be struck if a *478 right of civil action is permitted to the victim of perjured testimony, but only if it is limited to those cases where the perjury has already been proven by a criminal conviction. Once abuse of the privilege has been established by a criminal conviction of peijury there is no further need to immunize the witness from civil suit or to deny an injured person a remedy. Only by requiring this prior independent adjudication can it be assured that the civil remedy will not be used frivolously, threateningly or vengefully so as to discourage otherwise willing testimony in a civil or criminal action.
CONCLUSION
Plaintiff has not alleged a prior adjudication of perjury; neither does it appear that one was ever made. Accordingly, the court is constrained to find that the complaint is insufficiently pleaded. Plaintiff’s third cause of action is accordingly dismissed, with leave to replead on proof of a perjury conviction.* ****[6]

. See, e.g., Steinberg v Monasch, 85 AD2d 403; Steinberg v Steinberg, 106 Misc 2d 720; Steinberg v Steinberg, 87 AD2d 782.

. In a later appeal, the court dismissed an amended complaint because the damages resulted from the action of the authorities rather than from the defendant’s and the action of the authorities could not be attacked collaterally, in the instant action. (Brandt v Winchell, 286 App Div 249, affd 3 NY2d 628.)

. The stringent rules of pleading and proof applicable to defamation cases have never been applicable to actions on the case. However, while the privileges applicable in defamation actions, including that for testimony in a judicial proceeding, are generally available to defendants in injurious falsehood cases (see Restatement, Torts 2d, § 635, Comment a, and cases cited), they have been held not applicable to actions for prima facie tort. (See Schauder v Weiss, 83 NYS2d 317,323, affd 276 App Div 967, mot for lv to app den 276 App Div 1022.)

. The question of privilege has not been addressed by the parties here. They have not submitted a transcript of the subject hearing, making it impossible to determine the exact context in which the subject accusation was made. While a privilege is ordinarily waived if not pleaded as a defense, defendant’s time to answer the amended complaint has not yet run. (CPLR 3025.) Moreover, the overriding public policy considerations giving rise to the privilege require that it be considered by the court when assessing whether or not a cognizable claim has been pleaded.

. The 4-3 majority opinion in Martirano (25 NY2d 505) holds that an absolute privilege attaches to any statement, as long as it is relevant when made, in the context of *478 the speaker’s testimony, and was not solely uttered to malign. The dissent (Burke, J., p 509) persuasively argues that the majority appears to broaden the ambit of the absolute privilege beyond that recognized by prior case law. (Cf. Youmans v Smith, 153 NY 214; Garr v Selden, 4 NY 91; Marsh v Ellsworth, 50 NY 309; Moore v Manufacturer's Nat. Bank, 123 NY 420; Andrews v Gardiner, 224 NY 440.) Under this older view, the absolute testimonial privilege would attach only to statements pertinent to the subject matter of the litigation, rather than any subsidiary issues which may arise during the testimony of a given witness. On a balancing of all the other policy considerations, a qualified privilege should then attach to nonmalicious, good-faith statements by and pertinent to the testimony of the witness sought to be sued. Thus, if a witness, in good faith, testifies that his attorney typed an affidavit over his signature, without his authorization or ratification, if pertinent to the testimony (e.g., if it is offered to rebut attempted impeachment by prior inconsistent statement), but not pertinent to the subject of the litigation (e.g., a matrimonial action), it should be qualifiedly privileged, i.e., the claim should fail if the witness acted in good faith, without malice.

. While not so vague or ambiguous as to be incapable of being answered, the third cause of action is confusing and inartfully drafted. Thus, while a motion to dismiss for failure to state a cause of action under CPLR 3211 (subd [a], par 7) would have been more appropriate, the instant motion should not be denied because of its technical failure to comply with a narrow interpretation of CPLR 3024. (See 3 Weinstein-Kom-Miller, NY Civ Prac, par 3024.05.) Thus, failure to plead a condition precedent (i.e., a perjury conviction) should not be ignored because movant may have sought relief under a different section, particularly where the relief sought — repleading — is less sweeping than that which the court is empowered to give. Not only is the court not required to ignore the insufficiency of a pleading; the court has the inherent power to dismiss, sua sponte, a complaint which states no valid cause of action. Certainly here, given the important policy considerations at stake, dismissal is appropriate in the interest of justice and judicial economy. The only alternative — denial with leave to move to dismiss — would be unsatisfactory; not only would it encourage further delay and labor, but it would encourage precisely the sort of vexatious litigation which the privilege seeks to prevent.